# HAROLD W. LADY, Trustee v. PRINCE GEORGE'S COUNTY, MARYLAND

[No. 1300, September Term, 1978.]

*Decided July 11, 1979.*

The cause was argued before THOMPSON and WILNER, JJ., and JAMES S. GETTY, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Jess Joseph Smith, Jr.,* for appellant.

*Michael P. DeGeorge, Associate County Attorney for Prince George's County,* with whom were *Robert B. Ostrom, County Attorney, Carl A. Harris, Deputy County Attorney,* and *Karel C. Petraitis, Associate County Attorney,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

The question before us is a simple one: when a taxpayer overpays his county property taxes, is he entitled to interest on the overpayment when he obtains a refund? Under the current state of the law, the answer is "no".

Appellant, as trustee, was the owner of a certain tract of land and improvements in Prince George's County. On September 27, 1976, he dutifully paid $17,837.68 in property taxes to the county, this being the proper amount then levied for the 1976-77 taxable year. Subsequent to that payment, appellant sold the property to Private Mortgage Investors Trade Association, Inc.; however, because of a computer error, the county had failed to record the tax payment, and thus showed the year's taxes as being due and unpaid. In order to consummate the sale and have the deed recorded expeditiously, therefore, appellant was obliged to pay the taxes again. *See* Real Property Article, § 3-104. This he did on October 29, 1976, with a check for $15,324.48 for the taxes, and a separate check for $524.89 for interest and penalty.[1]

On April 20, 1977, appellant filed a claim for refund of the $17,837.68 overpayment, plus the interest and penalty of $524.89 that he had paid, plus interest on both amounts at the rate of 6% per annum. The county denied the claim because it had already refunded the overpayment to appellant's grantee. Appellant appealed this denial to the Maryland Tax Court, but prior to a decision by that tribunal, he filed a collateral action in the Circuit Court for Prince George's County — a "Declaration and Prayer for Ancillary Injunctive Relief" — seeking an order compelling the county to make the refund to him. With the county's concurrence, proceedings in the Tax Court were stayed pending the outcome of the judicial proceeding.

One of the complicating features of the case was that the grantee who had received the refund was impleaded by the county, and it maintained its right to the money by virtue of its contract with appellant. To that extent, the county found itself in the position of admitting that it owed someone the overpayment, but not being sure who that someone was. On November 2, 1978, the court decided that issue by entering judgment in favor of appellant for $17,837.68 — the exact amount of overpayment — without interest or costs. The

---

1. Between September 27 and October 29, the assessment on the improvements was lowered, thus reducing the amount of tax actually owed on the property.

county promptly paid that amount. Pursuant to appellant's motion, the court, on November 30, 1978, entered an additional judgment in appellant's favor for $524.89 — the interest and penalty previously paid by him — plus interest on that amount at the annual rate of 6% since its payment by appellant on October 29, 1976. The court denied appellant's request for interest on the $17,837.68, and that's what this appeal is all about.

The issue is not very complicated. It is a matter of statutory construction, and boils down initially to which of two statutes applies to this situation. Appellant seeks to hang his hat on Md. Anno. Code art. 81, § 261. That statute, captioned "Refunds", provides in relevant part that "[u]pon final determination of *any appeal,* any money paid by the taxpayer in excess of the amount properly chargeable under the determination, shall be refunded with interest at the rate of six per cent. (6%) per annum from the date of payment to the date of refund." (Emphasis supplied.) Appellant construes the words "any appeal" very broadly, as including the instant proceeding, and thus argues that the county is liable for the interest at 6%. The county, on the other hand, thinks that this proceeding was not "any appeal", and maintains that § 261 is therefore not applicable. The relevant statute, it says, is § 214 of article 81, read in the light of § 218 of the same article. The pertinent provisions of those statutes are as follows:

> § 214. "Whenever any person shall claim to have erroneously or mistakenly paid to the county commissioners of any county, or to the collector for such county, or to the collector or other official of any municipality, or to the Mayor and City Council of Baltimore, or the collector for Baltimore City, more money for *ordinary county or city taxes* than was properly and legally chargeable to or collectible from such person, he may file with the collector in any county or municipality or the appeal tax county (sic) in Baltimore City, a written application for the refund thereof, and if approved by such collector, or the said appeal tax court the said. county

commissioners or the said municipal officials or the Mayor and City Council of Baltimore shall levy and pay to such person *any money that was so paid.*" (Emphasis supplied.)

§ 218. All claims for the refund of *special* taxes, fees, charges, penalties or interest which may be allowed under the provisions of this subtitle shall, if no appeal is pending, be paid by the State, county or municipal agency authorized to collect the same out of any funds in the hands of such agency. Interest at the rate of six percent per annum shall be paid on such amounts refunded accounting from the date the taxes, fees, charges, penalties or interest so refunded were paid. . . ." (Emphasis supplied.)

Section 6 of article 81 classifies taxes as either "ordinary" or "special", and includes real estate taxes as "ordinary taxes." Thus, claims the county, in contrast to § 218, which provides for interest on the refund of "special" taxes, § 214 makes no such provision with respect to the refund of "ordinary" county taxes, but requires instead only the refund of "any money that was so paid."

The thrust of the county's argument is that there is no common law right to the refund of taxes erroneously, but voluntarily, overpaid, much less interest thereon, that the entitlement to such refund (and the amount and conditions thereof) are based solely upon statute, and that such statutes are to be narrowly construed. It is upon this premise that the omission in § 214 to require interest becomes, for the county, significant.

A plain reading of the relevant statutes against the backdrop of their legislative history, the principles laid down by the Court of Appeals, and the rationales used to support differing decisions in other States, leads us to conclude that the county's position is a valid one.

We start with *Rapley v. Montgomery County,* 261 Md. 98 (1971), where the Court reviewed much of the legislative and judicial history pertaining to the refund of overpaid taxes. The Court pointed out that, in sharp contrast to the situation

applicable to disputes over Federal taxes, the preferred method of challenging a State or county tax in Maryland was by an action to enjoin its collection, rather than an action to recover an overpayment. Thus, it said at page 103, "[i]n the absence of express statutory warrant, we have laid a heavy hand on actions brought at law to recover taxes paid, even if paid under protest, when the taxpayer made payment without seeking injunctive relief to test the validity of the imposition." Noting the impracticality of this preferred remedy — indeed to the point of quoting from Judge Markell's dissent in *Wasena Housing Corp. v. Levay,* 188 Md. 383, 396 (1947), that it "amounts to a trick to tease taxpayers with an illusory remedy . . ." — the Court nevertheless clearly held fast to the rule that there was no right to a refund of overpaid taxes except as permitted by statute. The clearest expressions of this are seen at the beginning and at the end of the Opinion, where the Court said, respectively: "taxes voluntarily paid under a mistake of law, even though paid under protest, are not recoverable in the absence of express legislative sanction" (p. 100), and "[t]he only possible escape from this harsh rule is found in the case where the taxing statute itself provides for a refund." (p. 111.)

Although, as noted in *Rapley,* legislative efforts at ameliorating "this harsh rule" date back at least to 1807, the fountainhead for our purposes is Laws of Md., 1929, ch. 226, for it was there that the Legislature (in the words of the *Rapley* Court) "first set up a comprehensive statutory scheme for the recovery of taxes erroneously or mistakenly paid." 261 Md. at 109. More important, perhaps, it represents the first common enactment of what later became §§ 214 and 261 — the first enactment of both statutes in the same Act.

Chapter 226 was the end product of a legislatively created Tax Revision Commission and represented a general revision and recodification of the tax laws of the State. Because it was a comprehensive treatment and not a collection of piece-meal amendments, differences in language used in similar or analogous contexts are especially significant as an indication of legislative intent. There is, in other words, less chance of language differences — insertions here and omissions there

— being merely the product of the draftsman's style and whim and more chance that they are truly expressive of deliberate legislative policy.

Chapter 226, as codified in the 1929 Supplement to the 1924 Code, divided article 81 into six major divisions: Rules of Construction, Classification of Taxes, Ordinary Taxes, Special Taxes, General Provisions, and Alternative Procedure as to Tax Sales. Among the "General Provisions" were §§ 152 and 153, comprising the subheading "Refund of Taxes" and §§ 182-188, comprising the subheading "Appeals". Section 152, a predecessor of present § 213, dealt with the refund of State taxes. It called upon the Comptroller and the Treasurer, prior to each session of the General Assembly, to prepare a list of all persons who erroneously or mistakenly paid into the Treasury more money for State taxes than was properly and legally chargeable to them, and to certify that list "with the amount of such taxes" to the Governor. The Governor was directed to "include the same" without alteration in the budget submitted to the Legislature.

Section 153, which dealt with county taxes and is a predecessor of current § 214, provided that whenever a person erroneously or mistakenly paid to the county more money for "taxes or other charges" than was properly and legally chargeable to or collected from such person, the county "shall rectify the error and immediately levy and pay to such person *any money that was so paid.*" (Emphasis supplied.)

It is significant to note that both of these sections pertained to any payment erroneously or mistakenly made, without apparent limitation as to the nature of the error or the circumstances under which the overpayment was made, and that neither provided for the payment of interest on the overpayment.

Sections 182-188 — the subheading "Appeals" — by contrast dealt with a somewhat narrower situation. Section 182 authorized an appeal to the county commissioners (and counterpart bodies with respect to Baltimore City and other municipalities) "as to the assessment of any property or any unit of tax value, or as to the increase or reduction or

abatement of any such assessment, or as to the classification thereof. . . ." Section 183 permitted a person claiming to be aggrieved "because of any assessment or classification, or because of any increase, reduction, abatement, modification, change or alteration or failure or refusal to increase, reduce, abate, modify or change any assessment, or because of any classification or change in classification, or refusal or failure to make a change" on the part of the county commissioners to appeal to the State Tax Commission. Sections 184 and 185 dealt with procedures before the State Tax Commission, and sections 186 and 187 concerned procedures for judicial review of the Commission's determination — *i.e.,* a further appeal to the Circuit Court and ultimately to the Court of Appeals. Section 188 then provided:

> "No appeal to the State Tax Commission . . . and no appeal from the State Tax Commission to a Circuit Court, or from a Circuit Court to the Court of Appeals, shall stay or in ·any manner affect the collection or enforcement *of the assessment or classification complained of;* but upon the final determination *of any such appeal* any taxes which such determination may show to have been illegally collected, shall be to the extent of illegality forthwith refunded *with interest,* and the disbursing officers of the State and of the several counties . . . are authorized and directed forthwith to make *such refunds."* (Emphasis supplied.)

It may be seen at a glance that these provisions, dealing with appeals, were directed at disputes over the assessment and classification of property — the proper valuation of property against which a tax rate would be applied — rather than with voluntary overpayments of the tax itself made in error. Indeed, as § 188 made clear, once the county commissioners made their determination, payment of the tax was no longer voluntary. The tax, calculated upon the assessment determined by them, *had* to be paid; collection would *not* be stayed by virtue of any further appeal. In contrast to the situation of a *voluntary* payment, albeit one

made under protest, the inability to avoid payment at that point, even by resort to injunctive actions, made the payment of interest particularly appropriate in the event the taxpayer ultimately prevailed. The preferred method of challenging the tax by an action to enjoin its collection — *i.e.,* the very rationale used to support the "common law" disentitlement to the refund of voluntary overpayments — was made unavailable in these cases by statute; and the *quid pro quo* for that was the allowance of interest.

Although article 81 has undergone revision and recodification since 1929, the substance and juxtaposition of these particular sections have not been materially changed.[2] They still relate essentially to disputes over the assessment, valuation, and classification of property; and, if that is the nature of the dispute, the special procedure set forth in them is the exclusive remedy for the taxpayer. *See Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588 (1978). Conversely, where the dispute involves not the assessment of property but the voluntary overpayment of the tax itself, the Court has concluded that the taxpayer's remedy (if he has one) is not under these sections dealing with "Appeals" but under those sections dealing with "Refunds". *See White v. Prince George's Co.,* 282 Md. 641, 653-54 (1978). The question there was the recovery of a "special" tax that had voluntarily been paid, and the Court held that the taxpayer's exclusive remedy was under §§ 215-217 of article 81.

The controversy here, of course, does not concern the assessment, valuation, or classification of property — nor even, in reality, the amount of tax due. It is purely and simply a case of a voluntary overpayment, and by the same reasoning that is apparent from the holdings in *Wash. Nat'l*

2. Laws of Md., 1959, ch. 757, which revised much of article 81, did away with the State Tax Commission, split the administrative and quasi-judicial functions formerly performed by it, and distributed them, respectively, to the State Department of Assessments and Taxation and the Maryland Tax Court. Part of the revision encompassed by that Act was the enactment of new § 260, which permits a taxpayer in the appeal process to avoid immediate collection — *i.e.,* to obtain a stay — by posting a bond guaranteed by a corporate surety. Although to some extent this may undercut the presumed rationale for originally permitting the recovery of interest in these cases, the legislative policy of allowing such interest nevertheless remained intact.

*Arena* and *White, supra,* it falls squarely and exclusively under § 214, and not under § 261.

Section 214, as noted, does not expressly provide for the payment of interest on a refund; and the question then is whether interest must be paid notwithstanding such omission. The principles that have been announced and applied with respect to the recovery of the tax itself — no recovery absent express legislative direction — would certainly seem equally applicable to the payment of interest; and this, as the county points out, is highlighted by the authorization of interest in the case of refunds of "special taxes" (§ 218) in contrast to the silence in that regard of § 214.

As pointed out in an Annotation, "Right to interest on tax refund or credit in absence of specific controlling statute", 88 A.L.R.2d 823, *et seq.,* the courts around the country are generally split on this subject. In the case triggering that annotation, *Lakefront Realty Corporation v. Lorenz,* 167 N.E.2d 236, 240 (Ill. 1960), the Illinois court described the division of authority this way (citations omitted):

> "Many courts have held that where the taxpayer is entitled to a refund on an excess payment of taxes, he is likewise entitled to interest on the refund as a matter of course, provided no statute or public policy mitigates against it. . . . The contrary view . . . is that interest cannot be allowed upon taxes that were illegally collected in the absence of a statute expressly providing for interest. . . . The latter view has its antecedents in the rule that interest, being a creature of statute is recoverable only by statute or contract, and in the practical aspects of the circumstances that a tax collector, being a mere trustee of public funds collected for specific purposes, has no money to pay interest in the absence of statutory authority to establish a fund for that purpose."

Some of the courts adopting the more liberal rule — allowing interest — have done so simply on grounds of

fairness, that the State (or other taxing jurisdiction) should be treated no differently than any other defendant wrongfully withholding money. This type of reasoning has not found favor in Maryland, however, as witness the continued vitality (except as expressly repealed or diluted by statute) of the general doctrine of sovereign immunity.[3] As did the Illinois court in *Lakefront Realty Corporation, supra,* we find the contrary view, not permitting the recovery of interest in the absence of express statutory authorization, to be the more persuasive one in light of the underlying pronouncements of the Court of Appeals and the nature of our own statutory scheme. Accordingly, we conclude that the judgment of the circuit court was correct to the extent that it "disallowed" appellant's claim for interest on the amount of the tax that was overpaid.

> *Judgment affirmed; appellant to pay the costs.*

---

**3.** At least one court adopting the liberal rule specifically referred to the taxpayer's inability in that State to challenge the tax by suit for injunctive relief, thereby making his payment of the disputed tax compulsory. *See* Chicago, St.P.M. & O.Ry. Co. v. Mundt, 229 N. W. 394 (S.D. 1930). As already noted, that is not the case in Maryland except for those disputes over assessments, valuations, or classifications, with respect to which interest on refunds is authorized by statute.