923 A.2d 1

**HARFORD COUNTY, Maryland, et al.**

v.

**SAKS FIFTH AVENUE DISTRIBUTION COMPANY.**

No. 26, Sept. Term, 2005.

Court of Appeals of Maryland.

April 17, 2007.

Reconsideration Denied May 31, 2007.

74

Sean P. Carven, Asst. County Atty. (Robert S. McCord, County Atty., Nancy L. Giorno, Deputy County Atty., Gregory A. Rapisarda, all on brief), for petitioners/cross-respondents.

K. Donald Proctor (Proctor & McKee, P.A., on brief), Towson, for respondent/cross-petitioner.

Charles W. Thompson, Jr., County Atty., Marc P. Hansen, Chief, General Counsel Division, Karen L. Federman Henry, Principal Counsel for Appeals, Scott R. Foncannon, Associate County Atty., amicus curiae.

Argued before BELL, C.J., RAKER,*WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

This case involves a claim for interest allegedly due to Saks Fifth Avenue Distribution Company, the respondent/cross-petitioner ("Saks"), from the petitioners/cross-respondents (collectively "the petitioners"), Harford County, Maryland ("the County") and the City of Aberdeen ("the City").[1] The genesis of the dispute is a private lease arrangement in respect to certain personal property[2] utilized by Saks in its

---

\* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**1.** The amount in controversy, the interest due Saks, if any is due, is stated in Saks's brief as being $313,468.54 from the County and $88,942.53 from the City. We assume these sums were calculated as of the date the taxes were refunded and, therefore, the exact amount of total interest now due and the amount of any pre-judgment interest will be a matter for calculation upon remand.

**2.** The nature of that personal property is not relevant to the issue before the Court, although we do note that the original purchase cost of the most significant item-a complex conveyor-was $11,044,576.42.

distribution center. Under the terms of that lease, the lessor of the personal property was required to pay the taxes due in respect to the property, which Saks then was required to reimburse, as part of its lease payments. During the period of time relevant in the case *sub judice,* the lessor paid the personal property taxes and Saks reimbursed the lessor as required under the lease.

The problem arose when, in the years 1998, 1999, and 2000, Saks inadvertently included the same personal property on which the lessor had already paid taxes, on its own personal property tax returns. That personal property was assessed by the State Department of Assessments and Taxation ("the SDAT") and, based on that assessment, both the County and the City issued Saks additional personal property tax bills. As indicated, the property assessed was the same personal property on which the lessor had already paid personal property taxes.

Saks paid the bills, not realizing that it was paying for the second time, the same taxes for which it had already reimbursed the lessor. In fact, Saks, by its mistake, was paying the taxes twice, once indirectly as part of its lease obligations, by reimbursing the lessor who had paid the personal property taxes, and once by paying directly to the petitioners, the very taxes for which it had reimbursed the lessor. The petitioners clearly were paid twice for the same taxes and do not argue otherwise. Nor do they dispute that refunds, which they both voluntarily paid, were due Saks. The only issue was whether Saks was due interest on the refunds.

When the petitioners did not pay interest to Saks voluntarily, Saks filed in the Circuit Court for Harford County a suit against the petitioners claiming that interest was due. Saks did not prevail in the Circuit Court, prompting its appeal to the Court of Special Appeals. That court, in an unreported opinion, reversed the judgment of the Circuit Court. Holding that interest was due Saks, it also remanded the case to the Circuit Court for a determination of whether, in addition to regular interest, pre-judgment interest on the refund interest

due, was required to be paid by the petitioners. We granted a writ of certiorari upon the petition of the governmental entities and Saks's conditional cross-petition. *Harford County v. Saks*, 388 Md. 97, 879 A.2d 42 (2005).

In the petition for certiorari, the petitioners asked:

"Whether the Court of Special Appeals erred as a matter of law when it interpreted and applied the refund provisions of Md.Code Ann., Tax–Property (2001 Repl.Vol.) so as to create a new right to interest which was not present under t he previous codification."

Saks's conditional cross-petition asked this Court to consider, in the event that we granted the petitioners' petition:

"Whether it is entitled, as a matter of right, to pre-judgment interest on the statutory sums due from the County and the City. . . ."

We answer the specific question posed by the petitioners in the negative and that by Saks in the affirmative.

## I.

The general requirements applicable at the time of the present case were found in various sections of the Tax–Property Article. Section 11–101[3] of the Tax–Property Article requires entities, such as Saks, to file annual reports to the

---

**3.** Maryland Code (1985, 2001 Repl.Vol.) § 11–101 of the Tax–Property Article provides:

"(a) *Annual filing.*—On or before April 15 of each year, a person shall submit a report on personal property to the Department if:
"(1) the person is a business trust, domestic corporation, limited liability company, limited liability partnership, or limited partnership;
"(2) the person is a foreign corporation, foreign limited liability company, foreign limited liability partnership, or foreign limited partnership registered or qualified to do business in the State; or
"(3) the person owns or during the preceding calendar year owned property that is subject to property tax.
"(b) *Form and contents of report.*—The report shall:
"(1) be in the form that the Department requires;
"(2) be under oath as the Department requires; and
"(3) contain the information that the Department requires."
Unless otherwise noted, all statutory provisions herein are found in this volume.

SDAT. Upon those entities' listing in those reports, as they were obliged to do, of their personal property situate in the State of Maryland, the SDAT would assess the value of that property.[4] In addition to notifying the taxpayers of the assessments, local jurisdictions were sent certifications of the valuations. Based on those assessments, the local jurisdictions applied their tax rates and issued bills to the respective taxpayers for personal property taxes. The taxpayers could appeal the assessments and the tax bills, pursuant to §§ 14–501 through 14–515 of the Tax–Property Article, but while the appeal was pending, the taxpayer, by posting a bond, pursuant to the provisions of § 14–514,[5] would obtain a stay of the obligation to pay the tax bill. Unless its obligation was stayed, the taxpayer had to pay the tax bill, pending the outcome of the appeal.

Generally, appeals with respect to the amount of the SDAT's valuation of a taxpayer's personal property must be taken within 45 days of the date of the SDAT's notice of assessment. Section 14–504 provides:

"(a) *In general.*—For personal property assessed by the Department, *any taxpayer*, a county, a municipal corporation, or the Attorney General *may submit a written appeal to the Department as to a value* or classification in a notice of assessment *on or before 45 days from the date of the notice.*

"(b) *Hearing required.*—If the requirements of subsection (a) of this section are met, the Department shall hold a hearing as provided under § 14–510 of this subtitle." (Emphasis added.)

---

**4.** Section 8–201(2) directed the SDAT to assess "business tangible personal property that is subject to property tax[.]"

**5.** Section 14–514 provides, in relevant part:
"An appeal of property tax does not stay or affect the collection or enforcement of the property tax or a classification, unless for personal property a person submits to the agency responsible for collecting the property tax a bond[.] . . ."

In the case of a taxpayer filing an inaccurate report in respect to personal property, however, the taxpayer, pursuant to § 14–505, has three years in which to file an appeal.[6] Section 14–505 provides:

"(a) *In general.*—For personal property assessed by the Department, *the owner who reported cost or market information for the personal property to the Department but failed to report the information accurately* may appeal the value or classification of the personal property set forth in the notice of assessment by submitting a petition for review to the Department if:

"(1) the owner claims that the personal property is valued at a higher value than if the information had been reported accurately; and

"(2) the appeal is made within 3 years of the date of the notice of assessment.

"(b) *Hearing required.*—If the requirements of subsection (a) of this section are met, the Department shall hold a hearing as provided under § 14–510 of this subtitle." (Emphasis added).[7]

The specific section from which the present controversy arose was § 14–611 of the Tax–Property Article. Section 14–611 provided, in respect to any refunds of taxes properly due a taxpayer, that:

---

**6.** To clarify one of the issues in the present case, § 14–504 applies when a taxpayer argues that the *SDAT* has made a mistake in valuing property reported to the SDAT. At the time in question, § 14–505 applied when the taxpayer appealed a mistake made by the *taxpayer* in reporting property to the SDAT. Rather than appeal pursuant to § 14–505 only, Saks, in an abundance of caution, appealed under both sections.

In light of our decision that § 14–505 is dispositive of the issue, we do not decide the issue on the basis of § 14–504, although we may discuss that section for the purposes of comparison.

**7.** Some of these provisions have since been re-codified in § 11–103 of the Tax–Property Article. We apply the statute in effect when this case arose.

"[A]ny money paid by a taxpayer that exceeds the amount properly chargeable under the determination *shall be refunded at the same rate of interest that the taxes would have borne if the taxes were determined to have been overdue.*" (Emphasis added.) [8]

Saks filed personal property tax returns with the SDAT, listing its personal property for the relevant years. That property was assessed by the SDAT as follows: 1998—$12,955,240; 1999–$15,918,999; 2000–$14,354,790. Saks was issued tax bills based upon these assessments, and it paid those bills. Subsequently, Saks filed amended personal property reports in compliance with § 15–505.[9] The SDAT then issued revised certifications of the assessments for the years in question: 1998–$3,014,730; 1999–$2,724,240; 2000—$1,796,900. The re-assessments resulted in a determination that Saks had overpaid the County in the amount of $835,219.72 and overpaid the City in the amount of $453,576.00. The County and the City refunded those sums to Saks. Neither the County nor the City paid interest on the refunded amount, however, notwithstanding the language of § 14–611, the statute in effect at the relevant time.

---

**8.** The General Assembly has since enacted new provisions which, in part, supersede the section of the Tax–Article that was applicable to municipalities when the present case arose. The new section, *which has no application in the present case,* § 14–919, provides:

"Notwithstanding any other provision of this title, a municipal corporation may pay a claim for a refund of personal property tax without interest within three years after the refund claim is approved if the Department determines that the refund is a result of a failure to file a report when due *or other taxpayer error.*" (Emphasis added.)

**9.** Saks submitted the affidavit of Michael W. Griffin, the SDAT's supervisor of assessments for tangible personal property—a position he has held since 1984—to the trial court in support of its motion for summary judgment. Mr. Griffin stated that from 1986 through 2002, it was the "longstanding administrative policy" of the SDAT to treat amended returns as an "appeal or petition for review under § 14–505." According to Mr. Griffin, the SDAT treated Saks's 1998, 1999, and 2000 returns as appeals in accordance with this policy. In its memorandum opinion, the trial court relied on Mr. Griffin's statement regarding this issue.

Saks maintains that it is entitled to both the payment of interest on the refunded taxes and pre-judgment interest on that interest.

## II.

After denying the motion for summary judgment filed by Saks, the Circuit Court for Harford County dismissed the complaint for failure to state a claim. In light of our holding that the trial court erred in applying the law with respect to summary judgment and because we believe that it is unlikely that the trial court would have dismissed the case *sua sponte* had it applied the correct standard, we will review the matter under the correct standard.

 A party moves for summary judgment on the grounds that "there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." [10] We review a trial court's decision on a motion for summary judgment de novo. *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 478, 914 A.2d 735, 740 (2007). In conducting that review, we seek to determine whether any material facts are in dispute and, if they are, we resolve them in favor of the non-moving party. *Id.* at 479, 914 A.2d at 741. If there are no material facts in dispute, the aim of the review is to determine whether the summary judgment decision was correct as a matter of law. *Hill v. Knapp*, 396 Md. 700, 711, 914 A.2d 1193, 1199 (2007); *Haas*, 396 Md. at 479, 914 A.2d at 741, *citing Livesay v. Baltimore*, 384 Md. 1, 9, 862 A.2d 33, 38 (2004). The parties do not dispute the relevant facts of this case and present two issues, both purely legal. Accordingly, the only issue for us to resolve is whether those two issues were correctly decided, as a matter of law.

---

**10.** See Maryland Rule 2–501(a) (2007), which provides:

"Motion. Any party may make a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. The motion shall be supported by affidavit if it is (1) filed before the day on which the adverse party's initial pleading or motion is filed or (2) based on facts no t contained in the record."

## III.

### A.

We begin our discussion by reviewing the statutory language relevant to Saks's entitlement to interest on a refund, as to which its entitlement is not disputed. The petitioners argue that Maryland Code (1985, Repl.Vol.2001) § 14–905 of the Tax–Property Article is the governing statute and, as such, they are only required to refund the amount of an overpayment of tax, without interest. Section 14–905, captioned "County or municipal corporation property tax refund criteria," in relevant part, provides:

"(a) *In general.*—Subject to § 14–919 of this subtitle, a person who submits a written refund claim to the appropriate collector for county or municipal corporation property tax erroneously or mistakenly paid to the collector is eligible for a refund of the amount paid that exceeds the amount that is properly and legally chargeable to or collectible from the person.

"(b) *Criteria.*—A person who submits a written refund claim to the person authorized to collect a county or municipal corporation charge or fee for the amount paid in excess of the charge or fee properly and legally chargeable or collectible is eligible for a refund of the excess charge or fee.

"(c) *Limitation.*—If the assessment on which county or municipal corporation property tax is payable has become final and has not been appealed as provided by Subtitle 5 of this title, a person is eligible for a refund of county or municipal corporation property tax under subsection (a) of this section only if the person paid a tax bill that is erroneous because of a mathematical error, mechanical error, error in the property description, or other clerical error made by the taxing authority or assessing authority, and not because of an error of valuation. . . ."

Saks, on the other hand, argues that § 14–611 is dispositive. That section provides:

"Subject to § 14–919 of this title, on the final determination of an appeal under Subtitle 5 of this title, any money paid by a taxpayer that exceeds the amount properly chargeable under the determination shall be refunded at the same rate of interest that the taxes would have borne if the taxes were determined to have been overdue."

Critical to its argument is the reference in § 14–611 to "an appeal under Subtitle 5." There are two provisions in Subtitle 5 that deal with "an appeal" and, therefore, are potentially relevant and applicable to the present case. They are § § 14–504 and 14–505. Section 14–504 applies to the situation in which "a value or classification in a notice of assessment" is appealed.[11] On the other hand, § 14–505 is applicable to the case *sub judice*, where the assessed tax amount has been overpaid. It addresses an appeal when the value or classification of assessed property has been reported inaccurately. That section states:

"(a) *In general.*—For personal property assessed by the Department, the owner who reported cost or market information for the personal property to the Department but failed to report the information accurately may appeal the value or classification of the personal property set forth in the notice of assessment by submitting a petition for review to the Department if:

"(1) the owner claims that the personal property is valued at a higher value than if the information had been reported accurately; and

"(2) the appeal is made within 3 years of the date of the notice of assessment. . . ."

The petitioners rely heavily on previous versions of the Maryland Tax Code to argue that the requirements of § 14–

---

11. Section 14–504, as relevant, provides:
"(a) *In general.*—For personal property assessed by the Department, any taxpayer, a county, a municipal corporation, or the Attorney General may submit a written appeal to the Department as to a value or classification in a notice of assessment on or before 45 days from the date of the notice. . . ."

611, in effect at the time of this case, were not met because Saks never filed an appeal within the meaning of §§ 14–504 and 14–505. In other words, according to the petitioners, the filing of an amended return did not constitute an appeal within the meaning of § 14–505, and it did not "trigger the interest feature of [ ] [§ 14–611]." They also contend that, because Saks did not appeal the SDAT's revised assessment to Maryland's Tax Court, it did not exhaust all administrative remedies and, therefore, was precluded from seeking judicial review. Moreover, the petitioners assert that "appeal," as that term is used in § 14–505, could only mean an appeal to the Tax Court and not a re-evaluation by the SDAT of its own assessment. The petitioners argue, in addition, after an analysis of prior versions of the Tax Code, that the re-codification of the previous statutes, resulting in the statutes under review, was not intended to be substantive. Thus, they submit, because under the previous statutes, Saks would not have been entitled to the interest it claims, it is not entitled to it under the statutes then in effect.[12]

Saks, predictably, makes the opposite argument. It claims, on the contrary, that the amended returns it filed constituted the petitions for review and, thus, were appeals, under §§ 14–504 and 14–505 of the Tax Code. Therefore, it maintains, the money was refunded pursuant to § 14–611 and should bear interest, in accordance with its provisions. We agree that Saks filed an appeal within the meaning of § 14–505.

The crux of the issue we must resolve is the meaning of "appeal" under § 14–505. We determine its meaning by applying the principals of statutory construction that we have so often stated and reiterated as hardly to need citation. " 'The cardinal rule of statutory interpretation is to ascertain

---

12. Counsel for the petitioners conceded at argument before the trial court that the petitioners had, in fact, been applying the current statute and making refunds, *including interest pursuant to the statute,* to other taxpayers for some period of time. Those previous payments had not come to the attention of the legal department, however, and if they had, he submitted, the legal department would have advised the petitioners against making the payments.

and effectuate the intent of the Legislature.' " *Centre Ins. Co. v. J.T.W.*, 397 Md. 71, 79, 916 A.2d 235, 239 (2007), *quoting Chow v. State*, 393 Md. 431, 443–44, 903 A.2d 388, 395 (2006). We give effect to the statute as it is written if the statutory language is unambiguous when construed according to its ordinary and everyday meaning. *Walzer v. Osborne*, 395 Md. 563, 571, 911 A.2d 427, 431 (2006); *City of Baltimore Development Corp. v. Carmel Realty Assoc.'s*, 395 Md. 299, 319, 910 A.2d 406, 418 (2006); *Chow*, 393 Md. at 443–44, 903 A.2d at 395. "We do so 'on the tacit theory that the Legislature is presumed to have meant what it said and said what it meant.' " *Walzer*, 395 Md. at 572, 911 A.2d at 432, *quoting Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002).

Before looking beyond the statutory text to discern the meaning of a statute, " 'there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute.' " *Carmel Realty*, 395 Md. at 319, 910 A.2d at 418, *quoting Chow*, 393 Md. at 444, 903 A.2d at 395. If there is no ambiguity, we confine ourselves to the text of the statute and refrain from adding or deleting words. *Stoddard v. State*, 395 Md. 653, 662, 911 A.2d 1245, 1250 (2006); *Carmel Realty*, 395 Md. at 319, 910 A.2d at 418. The text of a statute must be read in such a way that no aspect of it is rendered superfluous or nugatory. *Chow*, 393 Md. at 443, 903 A.2d at 395; *Collins v. State*, 383 Md. 684, 691, 861 A.2d 727, 732 (2004). Finally, we will not read into the statute words that give it an interpretation that limits or extends its application beyond the words the Legislature used. *Centre Ins.*, 397 Md. at 80, 916 A.2d at 240; *Chow*, 393 Md. at 444, 903 A.2d at 395; *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003).

There was, during the relevant time period,[13] no ambiguity in the language of §§ 14–504, 14–505, and 14–611. Section 14–

---

13. The General Assembly has, subsequently, by Chapter 529 of the Acts of 2002, repealed § 14–505 and modified § 14–611 to eliminate the requirement for payment of interest in the present context. Thus, the General Assembly appears to have addressed the concerns expressed by

611 unambiguously provided that, once a final determination is made of an appeal under Subtitle 5 of Title 14, any money a taxpayer overpaid was to be refunded at the same rate of interest that would have been applied to the taxes had they been overdue.

■ As mentioned above, the issue is what constitutes an appeal under Subtitle 5 of Title 14. This case concerns the assessment of personal property by the SDAT. Appeals of SDAT assessments of personal property may be brought under § 14–504, subsection (a) which permits any taxpayer claiming that the SDAT made a mistake in valuation or classification to file a written appeal to the SDAT addressing that *value or classification,* but the taxpayer must do so within 45 days of the notice of assessment. This provision is not applicable to the present case. On the other hand, § 14–505 allows the owner of personal property, *who reported cost or market information* to the SDAT, *but failed to do so accurately,* to appeal the value of the personal property in the notice of assessment. Subsection (a)(1). This may be done by filing a petition for review within three years of the date of the notice of assessment. *See* § 14–505(a)(2). Only § 14–505(a) is applicable in the case *sub judice.*

Although the petitioners do not dispute that Saks submitted amended returns for 1998 through 2000, they appear to dispute two things: the propriety and, thus, correctness of the SDAT's practice of treating the filing of amended returns as appeals or petitions for review and that Saks's "appeals" were final. In other words, they maintain that the conclusion of an

---

the petitioners and by Montgomery County, which filed an amicus brief, that interpreting the statute as it is written would create a windfall for Saks and other taxpayers similarly situated, by allowing them to benefit from filing an erroneous return. In essence, noting the interest rate on refunds, 18% for Harford County and 8% in the case of Montgomery County, the petitioners and Montgomery County argue that interpreting the statute as it was written would allow a taxpayer to make a good investment by "mistakenly" overpaying its taxes. This issue was a matter for the General Assembly. It acted. The General Assembly resolved the matter prospectively.

appeal in the Tax Court is the only way a decision can become final, and the Tax Court never rendered a decision.

We are not persuaded by the petitioners' argument that filing an amended return does not constitute an appeal under § 14–505. Section 14–505 required, by way of appeal, that a "petition for review" be submitted by the owner who inaccurately reported the value of his taxes to the SDAT. Section 14–501 defines a petition for review as "a petition for reclassification or revaluation of property." According to the sworn affidavit of Michael W. Griffin, the SDAT's supervisor of assessments for tangible personal property during the relevant time period, the SDAT treated an amended return as a petition for review because it "correct[ed] the value or classification of previously inaccurately reported cost or market information[.]" On this record, both common sense and logic dictate both this approach and the result reached by the Court of Special Appeals.

The petitioners' argument regarding the finality of appeal is misplaced as well. There was nothing in the statutory scheme that required, or even suggested, that when the SDAT reassesses property in a taxpayer's favor, the taxpayer still must appeal that ruling, albeit a favorable one, to the Tax Court.[14] Decisions made under §§ 14–504 and 14–505 may be appealed to the Tax Court pursuant to § 14–512(a), but there is no statutory requirement that they *must* be appealed to the Tax Court. This is especially so when, as here, the SDAT decision is favorable to the taxpayer.

To be sure, our case law generally requires a litigant to exhaust all administrative remedies prior to seeking judicial review. *See Furnitureland South, Inc. v. Comptroller,* 364 Md. 126, 133, 771 A.2d 1061, 1065 (2001) (and cases cited therein). The present case, however, is distinguishable from those cases. In this case, Saks won its appeal with the SDAT.

---

**14.** Despite its name, the Maryland Tax Court is an administrative agency and not a judicial body. *Shipp v. Bevard,* 291 Md. 590, 592 n. 1, 435 A.2d 1114, 1115 n. 1 (1981), *citing Shell Oil Co. v. Supervisor,* 276 Md. 36, 38–47, 343 A.2d 521, 522–28 (1975).

It, therefore, had no reason to appeal that favorable decision to the Tax Court. Saks only wanted the decision of the SDAT enforced. It would have been illogical for Saks to appeal a decision in its favor, even had it been permitted to do so.[15] Were we to hold otherwise, the County and the City would be in a position where they could lose at the SDAT hearing, as they did, not appeal to the Tax Court, which they did not do, and never comply with the full extent of the SDAT's decision because there would be no way for Saks to enforce that decision in the Circuit Court. Such a result would be inconsistent with the use of the word "appeal" in §§ 14–504, 14–505 and 14–611.

The petitioners' argument depends quite heavily on the interpretation given previous versions of the Tax Code. We fail to see how previous enactments of the Tax Code and the cases interpreting them shed any light on the interpretation of the unambiguously worded §§ 14–504 and 14–505.

Even if the statutory scheme were ambiguous, which it is not, our case law has not interpreted the tax refund statutes as the petitioners suggest it does. Both parties cite *Baltimore County v. Xerox Corp.*, 286 Md. 220, 406 A.2d 917 (1979), in support of their arguments. The petitioners, ignoring the actual rationale of the case, focus on the fact that in proceed-

---

**15.** "It is established as a general principle that only a party aggrieved by a court's judgment may take an appeal and that one may not appeal or cross-appeal from a judgment wholly in his favor," *Montrose Christian School Corp. v. Walsh*, 363 Md. 565, 578 n. 3, 770 A.2d 111, 118 n. 3 (2001), *quoting Offutt v. Montgomery Co. Bd. of Educ.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979), although "that party may, as an appellee and without taking a cross-appeal, argue as a ground for affirmance the matter that was resolved against it at trial." *Id. See also Boitnott v. Mayor and City Council of Baltimore*, 356 Md. 226, 233–34 n. 7, 738 A.2d 881, 885 n. 7 (1999); *Ins. Comm'r v. Equitable*, 339 Md. 596, 612 n. 8, 664 A.2d 862, 870 n. 8 (1995); *Paolino v. McCormick & Co.*, 314 Md. 575, 579, 552 A.2d 868, 870 (1989) ("[A]n appeal or cross appeal is impermissible from a judgment wholly in a party's favor"); *Auto. Trade Ass'n v. Harold Folk Enter.*, 301 Md. 642, 648–49, 484 A.2d 612, 615 (1984); *Joseph H. Munson Co. v. Sec. of State*, 294 Md. 160, 167–68, 448 A.2d 935, 939–40 (1982), *aff'd*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

ings prior to the appeal in that case, Xerox appealed the matter to the Tax Court.

In that case, there was a dispute between Xerox and the SDAT over the assessment of personal property for the tax years 1970 through 1973. The SDAT deferred assessing the property for the subsequent years, 1974–1976, pending the outcome of the litigation. Earlier in the litigation, after the Tax Court had resolved an issue in favor of Xerox, the SDAT's petition for certiorari to this Court was granted. After hearing the case, this Court remanded the case for further proceedings. *State Dep't. of Assessments and Taxation v. Greyhound Computer Corp.*, 271 Md. 575, 320 A.2d 40 (1974). Thereafter, the parties reached a settlement agreement, under the terms of which the SDAT agreed that Xerox was owed a refund for 1970–1973. The SDAT then issued assessments for the years 1974 through 1976, resulting in taxes being owed b y Xerox for those years. Although Baltimore County refused to pay the refund it owed Xerox, it demanded that Xerox pay the assessments. Xerox gave Baltimore County a check for the difference between the taxes due and the amount of the refund it was due. It then filed suit against Baltimore County, arguing that once the settlement agreement was reached, it was due the refund from Baltimore County, without further action on its part. *Xerox*, 286 Md. at 223, 406 A.2d at 918. Conversely, Baltimore County argued that the refund was not owed until Xerox had paid all outstanding taxes and that, in any event, in order to collect its refund, Xerox had to exhaust certain administrative remedies. *Id.* As relevant to the present case, the Circuit Court found that Xerox was entitled to the refund without further action and to interest on the excess payments it had made. *Xerox*, 286 Md. at 224, 406 A.2d at 919.

The issue presented to this Court was, "whether, upon a final determination that Xerox had paid money to Baltimore County in excess of the amount properly chargeable for ordinary taxes on tangible personal property, Baltimore County was obliged to refund such excess automatically without further action on the part of Xerox." *Id.* We held that the

statutory scheme then in existence required Baltimore County to refund automatically the excess personal property tax paid by Xerox, with interest. *Xerox,* 286 Md. at 230–31, 406 A.2d at 922. We reasoned:

"... *§ 261* [16] *requires that upon final determination of any appeal which results in a finding that money was paid in excess of the amount properly chargeable because of an improper assessment, the excess shall be refunded. In other words, § 261 provides for refund arising from over-payment due to an assessment duly challenged and found to be wrong.* Section 261 does not predicate its duty of refunding the erroneous tax collection upon any mistake, either of law or of fact, and, indeed, any characterization of the overpayment as a mistake or otherwise is immaterial. *The clear legislative intent is that any money paid in excess of the amount properly chargeable under a correct assessment must be refunded with interest.*"

*Id.* at 227, 406 A.2d at 920–21 (emphasis added) (footnote omitted). Thus, in *Xerox,* we interpreted § 261, the statute then in effect, to require money paid in excess of the amount of taxes owed, to be refunded with interest, once it was finally determined that an amount in excess of that properly assessable had been paid.

At the time relevant to the present case, the language of § 14–611 provided that upon the final determination of an appeal, refunds were to be paid with the same rate of interest that the taxes would have borne if they were overdue. Section 261 simply has no effect on the interpretation of § 14–611. The General Assembly is presumed to have been aware of our decision in *Xerox* when it enacted the version of § 14–611 in effect when this case was decided. Nor did the subsequent

---

**16.** Maryland Code (1957, 1969 Repl.Vol.), Art. 81, § 261 provided:

"Upon final determination of any appeal, any money paid in excess of the amount properly chargeable under such determination, shall be refunded with interest at the rate of six per cent. (6%) per annum from the date of payment to the date of refund. The sources of refund shall be [as] specified in the applicable provisions of §§ 213 to 219, inclusive, of this article."

repeal and re-enactment of the statute to provide otherwise with respect to interest due, occurring after the inception of the present case, have any relevance to the resolution of that issue in this specific case.[17] We hold that, because appeals under the version of § 14–505, then in effect, were final once the provisions therein were complied with, as they were here, Saks was owed interest on its refunds, in accordance with § 14–611, from the date of overpayment until the date the refund was paid.[18]

---

**17.** The petitioners cite to other cases from this Court in support of their argument. The first, *Wasena Housing Corp. v. Levay*, 188 Md. 383, 52 A.2d 903 (1947), is cited for the proposition that "refunds are a matter of grace with the legislature." We do not see how this supports the petitioners' arguments because it was the statute in the case *sub judice* that gave Saks its right to a refund with interest. The petitioners also rely on *MPTH Assoc.'s v. State Dept. of Assessments and Taxation,* 302 Md. 319, 487 A.2d 1184 (1985). That case, too, is distinguishable. There, we addressed whether an increased assessment made by an appeal board regarding the previous year's taxes automatically applies to the subsequent year. We determined that the increased assessment did not apply automatically and that the taxpayer was entitled to a refund without interest, but we did so on the grounds that the taxpayer did not have notice of the increased assessment, which prevented the taxpayer from availing itself of the normal administrative remedies. *Id.* at 327–28, 487 A.2d at 1188–89. That case, thus, simply has no relevance to the present case. *Lady v. Prince George's County,* 43 Md.App. 99, 403 A.2d 1277 (1979), which is not binding on this Court and, in any event, is also distinguishable, is heavily relied upon by the petitioners. In that case, the taxpayer timely and fully paid his real property taxes. Due to a computer error, Prince George's County did not properly record the payment and, in fact, recorded the taxes as being unpaid. In order to complete a sale of the real property in question, the taxpayer paid the taxes a second time. Thus, in that case, there was no error in overevaluation as there was in the present case. The error in *Lady,* unlike the present case, did not concern the "assessment, valuation, or classification of property ... It [was] purely and simply a case of a voluntary overpayment...." *Id.* at 106, 403 A.2d at 1281. Under the circumstances in *Lady,* the Court of Special Appeals applied Article 81, § 214, which did not permit interest on a refund for voluntary overpayment, instead of Art. 81, § 261, which did. The circumstances of the present case involved the overevaluation of property which, under the statutory scheme in effect at the time the value of Saks's property was overstated, permitted Saks to recover the refund with interest.

**18.** Maryland Code (1985, 2001 Repl.Vol.) § 14–603(a) of the Tax–Property Article provides that the rate of interest for a municipal

## B.

Saks argues on cross-petition that it is entitled to pre-judgment interest as a matter of right—not as a matter of discretion—on the interest awarded, based upon the refunded amounts of taxes.[19] We agree.

■■■ We discussed pre-judgment interest in *Buxton v. Buxton,* 363 Md. 634, 770 A.2d 152 (2001). In that case, Judge Wilner, writing for the Court, reiterated the "three basic rules governing the allowance of pre-judgment interest[,]" *id.* at 656, 770 A.2d at 165, where pre-judgment interest is payable as a matter of right, where it is not allowed and where its allowance is discretionary. We explained the rules, as follows:

"Pre-judgment interest is allowable as a matter of right when 'the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.' *First Virginia Bank v. Settles,* 322 Md. 555, 564, 588 A.2d 803, 807 (1991); *State Highway Admin. v. Kim,* 353 Md. 313, 326, 726 A.2d 238, 245 (1999); *United Cable v. Burch,* 354 Md. 658, 668, 732 A.2d 887, 892 (1999). As we explained in *I.W. Berman Prop. v. Porter Bros.[ ],* 276 Md. [1,] 16–17, 344 A.2d [65,] 75 [(1975)], the right to pre-judgment interest as of course arises under written contracts to pay money on a day certain, such as bills of exchange or promissory notes, in actions on bonds or

corporation was "two-thirds of 1% for each month or fraction of a month . . ." Thus, this is the rate of interest the Circuit Court is to apply to the refund the City of Aberdeen paid Saks. Section 14–603(b) allows the governing body of a county which has adopted a charter form of government to set its own rate of interest for overdue taxes. Harford County is such a county. Thus, the Circuit Court is to apply the rate of interest that was in effect under the applicable section of the Harford County Code, at the relevant time (1998–2000), from the date of Saks's overpayment until the date the refund was paid to determine the amount of interest the County owes Saks on the refund.

**19.** We shall refer to the interest awarded based upon the refund amounts as "refund interest" and the interest owed on the refund interest as "pre-judgment interest."

under contracts providing for the payment of interest, in cases where the money claimed has actually been used by the other party, and in sums payable under leases as rent. Pre-judgment interest has been held a matter of right as well in conversion cases where the value of the chattel converted is readily ascertainable. *See Robert C. Herd & Company v. Krawill Machinery Corp.*, 256 F.2d 946 (4th Cir.1958), aff'd, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959).

On the other hand, in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement, the award itself is presumed to be comprehensive, and pre-judgment interest is not allowed. In *Taylor v. Wahby*, 271 Md. 101, 113, 314 A.2d 100, 106 (1974), we held that, in a tort action in which the claim is unliquidated and not reasonably ascertainable until the verdict, interest runs from the time of verdict. Between these poles of allowance as of right and absolute non-allowance is a broad category of contract cases in which the allowance of pre-judgment interest is within the discretion of the trier of fact. *See Crystal v. West & Callahan*, 328 Md. 318, 343, 614 A.2d 560, 573 (1992); *I.W. Berman Prop. v. Porter Bros., supra*, 276 Md. 1, 344 A.2d 65."

*Buxton*, 363 Md. at 656–57, 770 A.2d at 165.

 Generally, "pre-judgment interest as a matter of right is the exception rather than the rule...." *Ver Brycke v. Ver Brycke*, 379 Md. 669, 702, 843 A.2d 758, 777 (2004); *East Park Ltd. P'ship v. Larkin*, 167 Md.App. 599, 624, 893 A.2d 1219, 1234 (2006). The exception applies in this case, however. Having concluded, *supra*, that Saks was due interest on the refund monies, as a matter of right, we hold that Saks also is due pre-judgment interest on that "refund interest." This is evident from the application of the rule regarding pre-judgment interest as a matter of right to the present situation.

First, Maryland Code (1985, Repl.Vol.2001) § 14–611 of the Tax–Property Article created an obligation on the part of the

petitioners to pay Saks interest on the refund due it, i.e., the refund interest. *See Buxton,* 363 Md. at 656, 770 A.2d at 165; *Ver Brycke,* 379 Md. at 702, 843 A.2d at 777. Second, the amount of refund interest became certain, definite, and liquidated[20] on the date that the refund was made to Saks—a specific date prior to judgment. *See Buxton,* 363 Md. at 656, 770 A.2d at 165; *Ver Brycke,* 379 Md. at 702, 843 A.2d at 777. Third, the petitioners' withholding of the refund interest deprived Saks of the use of that fixed and ascertainable amount of money (the refund interest) from the time that the refund was made until the present. *See Buxton,* 363 Md. at 656, 770 A.2d at 165; *Ver Brycke,* 379 Md. at 702–03, 843 A.2d at 777–78. The County and the City have, furthermore, had the use of any refund interest derived from Saks's refund monies. Therefore, this is a case "where the money claimed has actually been used by the other party[.]" *Buxton,* 363 Md. at 656, 770 A.2d at 165.

This holding is consistent with the purpose of awarding pre-judgment interest. As we stated in *Buxton:* "Pre-judgment interest, we held in *I.W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 24, 344 A.2d 65, 79 (1975), is 'to compensate the aggrieved party for the loss of the use of the principal liquidated sum found due it and the loss of income from such funds.'" *Buxton,* 363 Md. at 652, 770 A.2d at 162. In other words, pre-judgment interest "compensates the judgment creditor for *his or her* inability to use the funds that should have been in his or her hands at some earlier time and usually does not depend on what the debtor might have done with the money." *Buxton,* 363 Md. at 652, 770 A.2d at 162–63 (emphasis in original); *East Park,* 167 Md.App. at 625, 893 A.2d at 1234.

We hold that the refund interest should have been awarded to Saks at the time it received its refund monies. Pursuant to § 14–611 of the Tax–Property Article, the County and the

---

**20.** The amount of refund interest was calculable, and thus fixed and ascertainable, pursuant to the statutory scheme, as explicated *supra.*

City had an obligation to pay Saks such refund interest at that time. The amount of refund interest was certain, definite, and liquidated (calculable) as of that specific date prior to judgment. Due to the petitioners failure to pay Saks the refund interest, Saks has been deprived of the use of that money (the refund-interest) from the time of the refund. For these reasons Saks is entitled to pre-judgment interest as a matter of right on the amounts of refund interest.

That pre-judgment interest shall be calculated at the legal rate of six percent per annum. Md. Const. Art. III, § 57 ("The Legal Rate of Interest shall be *Six per cent. per annum;* unless otherwise provided by the General Assembly.") (emphasis added); *Crystal v. West & Callahan, Inc.,* 328 Md. 318, 342, 614 A.2d 560, 572 (1992); *Maryland Nat'l Bank v. Cummins,* 322 Md. 570, 599–600, 588 A.2d 1205, 1219 (1991). The statute (§ 14–611) dictates the amount of refund interest only. There is no comparable statute, applicable here, for pre-judgment interest rates. Accordingly, the provisions of the Constitution control. We reverse the Court of Special Appeals's holding below that the issue of whether pre-judgment interest is required is a discretionary decision for the fact-finder and remand to the Circuit Court the issue of pre-judgment interest solely for calculation.

## IV.

For the foregoing reasons, we hold that the Court of Special Appeals was correct as a matter of law when it concluded that the County and the City owed Saks interest on the money they refunded to it, in accordance with §§ 14–611 and 14–603, then in effect. Interest was due from the date of overpayment until the date the refund was paid. We hold that Saks also is entitled to pre-judgment interest at the rate of six percent per annum on the refund-interest it was owed by the County and the City under the relevant statutory provisions from the date the refund was paid until judgment consistent with this opinion is rendered by the trial court.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR HARFORD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT, AND IN THE COURT OF SPECIAL APPEALS, TO BE PAID BY PETITIONERS/CROSS–RESPONDENTS.