**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Mark Steven TOMEY, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 2005.

Filed Sept. 19, 2005.

Michael S. Ferguson, for appellant.

Brian D. Jacisin, Asst. District Atty., York, for Com., appellee.

BEFORE: STEVENS, BOWES, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Mark Tomey, appeals from the judgment of sentence imposed by the Honorable Stephen Linebaugh of the York County Court of Common Pleas after he found Appellant guilty of the summary offense of cruelty to animals.[1] Specifically, Appellant challenges whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant wantonly and cruelly deprived his

---

1. 18 Pa.C.S.A. § 5511(c).

Siberian Huskies of access to clean and sanitary shelter. It is our determination that Appellant's argument is based on a misinterpretation of the applicable statute, in that the Commonwealth satisfies its burden by proving that Appellant acted wantonly **or** cruelly in providing unsanitary shelter for his dogs. Viewing the evidence in the light most favorable to the verdict winner, we hold that the Commonwealth presented more than enough evidence to establish that Appellant acted wantonly, satisfying the statutory requirement for his conviction. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this case, as summarized from the trial court opinion,[2] are as follows. On the evening of October 20, 2003, Officer Darryl Smuck of the Southern Regional police department was dispatched to a house owned by Appellant to investigate an alleged burglary. When the officer arrived, Appellant's wife, Carmen Tomey, gave him permission to enter the house and search for evidence of the crime. Upon entering the house through the front door, Officer Smuck was struck by an overpowering odor of ammonia. He soon located the source of the odor as he observed what appeared to be large amounts of dog feces and urine spread about the floor, both on and off the newspaper which had been strewn about to absorb it. Officer Smuck noted empty food and water bowls, and counted four dogs running loose in the living room. As he attempted to conduct his burglary investigation in the living room and kitchen, Officer Smuck could hear more animals barking and scratching in other parts of the house. After only a few minutes of investigation, with his eyes burning and feeling nauseated by the smell of the home, Officer Smuck left the house. Hav-

ing discovered no evidence of a burglary, but very concerned by the conditions in the home, Officer Smuck called for backup from the police department and the York County Society for the Prevention of Cruelty to Animals ("SPCA"). A search warrant was obtained and executed, and Appellant's dogs were taken into protective custody. All told, the SPCA removed fourteen (14) Siberian Huskies from the house and placed them in a kennel. Four dogs were found in the living room, three in the bathroom, and seven in the basement of Appellant's house. All of the food and water containers in the house, as well as the toilet, were empty, and the filthy conditions of the living room were found to exist throughout the dwelling.

¶ 3 On October 29, 2003, Officer Smuck filed ten citations charging Appellant with cruelty to animals. At a hearing on December 17, 2003, District Justice Vera Heilman found Appellant guilty of all ten offenses, sentenced him to a $1000 fine, and ordered the forfeiture of the animals to the York County SPCA. Appellant filed a timely summary conviction appeal and was granted a *de novo* hearing, which was held on February 18, 2004, before Judge Linebaugh in the York County Court of Common Pleas. At that hearing, the Commonwealth presented testimony from Officer Smuck and an SPCA Humane Officer as to the conditions in the home. The Commonwealth also presented testimony from the dog groomer who groomed and boarded the Huskies after they were rescued, as well as the veterinarian who had examined the dogs for the SPCA. Although the veterinarian noted that all of the dogs were generally in good health, he testified that the conditions in the home were unsafe and unsanitary, and posed a threat to the dogs. The dog groomer tes-

---

**2.** (Trial Court Opinion, dated August 4, 2004).

tified that all of the dogs were stained with urine and had a strong odor of feces on their hindquarters. The dogs all required bathing, nail clipping and ear cleaning, and one required treatment for sores found all over his neck. All of the dogs had to have their heavy undercoats brushed out, and some of them were matted so badly that they had to be partially shaved. The matting had actually impinged on the ability of some of the dogs to walk normally.

¶ 4 Based upon the evidence presented, Judge Linebaugh found Appellant guilty of all ten counts of cruelty to animals, sentenced him to a $1000 fine, and also ordered forfeiture of the dogs.[3] This timely appeal followed, wherein Appellant raises the following issue for our consideration:

WHETHER THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF CRUELTY TO ANIMALS, 18 Pa.C.S.A. § 5511 WHEN THE COMMONWEALTH COULD NOT PROVE WANTON AND CRUEL CONDUCT ON THE PART OF THE APPELLANT?

(Appellant's Brief at 4).

¶ 5 Where a trial court has heard a case *de novo*, our standard of review is limited to a determination of whether the court "committed an error of law or abuse of discretion, and whether the findings of the trial court are supported by competent evidence." *Commonwealth v. Simpson*, 832 A.2d 496, 498 (Pa.Super.2003).

¶ 6 In his only issue, Appellant alleges that the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that Appellant acted in a wanton **and** cruel manner in depriving his dogs of sanitary shelter. (Appellant's Brief at 8, 10, 12, 13). Because we find that Appel-

lant has misstated the Commonwealth's burden under the cruelty to animals' statute, and because we conclude that the Commonwealth did meet its actual burden, we determine that Appellant's claim is wholly without merit.

¶ 7 When evaluating claims challenging the sufficiency of the evidence to support a conviction,

we review the evidence admitted at trial, along with any reasonable inferences that may be drawn from that evidence, in the light most favorable to the verdict winner. A conviction will be upheld if after review we find that the [fact-finder] could have found every element of the crime beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." The Commonwealth may prove each element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Furthermore, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Lloyd*, 878 A.2d 867, 2005 PA Super 236, ¶ 8 (citing *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1250–

---

**3.** The trial court later modified Appellant's judgment of sentence, vacating that portion of

the February 18, 2004 order which directed forfeiture of the dogs.

51 (Pa.Super.2005) (*en banc*) (internal citations and quotations omitted)).

¶ 8 The summary offense of cruelty to animals is defined by statute as follows:

> **(c) Cruelty to animals.**—A person commits a summary offense if he wantonly **or** cruelly illtreats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry. This subsection shall not apply to activity undertaken in normal agricultural operation.

18 Pa.C.S.A. 5511(c) (emphasis added).[4] The difference in the actual standards as set forth by the statute and those put forth by Appellant are immediately apparent. We are not troubled by this inconsistency, however, as our resolution of what only appears to be a discrepancy is guided by well-settled principles.

■ ¶ 9 "[W]hen interpreting a statute, our courts must give plain meaning to the words therein. It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute." *Commonwealth v. James*, 863 A.2d 1179, 1182 (Pa.Super.2004) (quoting *Commonwealth v. Engle*, 847 A.2d 88, 91 (Pa.Super.2004) (internal citation omitted)). As any fair reading of the cruelty to animals statute makes plain, the culpability required of an offender is not wanton **and** cruel, but wanton **or** cruel.

¶ 10 Appellant relies on *Simpson, supra,* to support his argument for the "and" construction of the required mental state. In *Simpson*, this Court reversed the appellant's conviction for animal cruelty because the trial court failed to find that the appellant had acted **either** wantonly **or** cruelly. *Id.* at 500. Comparing the old statute with the revised statute, this Court reasoned "[i]t logically follows that under § 5511, a conviction based on 'neglect', which occupies the same grammatical position in the sentence as 'abuse' did in the [former Act,] would also require proof that the defendant acted wantonly **or** cruelly." *Id.* (emphasis added). However, the panel also noted in its disposition that "the Commonwealth must prove that a defendant acted wantonly and cruelly to be convicted of cruelty to animals based on neglect." *Id.* Although the decision utilizes both conjunctions, we conclude that Appellant's reliance on *Simpson* is unavailing for three reasons.

¶ 11 First, the *Simpson* decision was interpreting a different provision of the statute than the one applicable in the instant case. While Mr. Simpson was found guilty of *neglecting* his dogs, here, Appellant was found guilty of failing to provide his dogs with clean and sanitary shelter. *See* § 5511(c), *supra.* The *Simpson* Court itself acknowledged the limited scope of its holding when it declined to decide "whether the 'wanton and cruel' standard applies to the remaining types of conduct in the statute." *Simpson, supra* at 500–501. Second, and more importantly, we do not read the holding of *Simpson* as broadly as Appellant urges. *Simpson* deals with the relatively narrow issue of whether a conviction for animal cruelty can stand where the trial court failed to conclude that the defendant acted either wantonly or cruelly.

---

4. The Act has been amended, and the relevant portion of the current version, 18 Pa.C.S.A. 5511(c)(1), became effective December 8, 2004.

Through basic statutory analysis this Court answered in the negative. Thus, it is our conclusion that the holding in *Simpson* does not set forth a "wantonly and cruelly" standard in contradiction to the very precise statutory language, but merely defines a threshold below which a conviction will not stand. Finally, we observe that since the decision in *Simpson,* our Legislature has promulgated a revised version of the cruelty to animals statute which retains the "wantonly **or** cruelly" formation. This Court can not create a standard which the Legislature has repeatedly rejected. Therefore, we will proceed with our review under the mandate of § 5511(c) which provides that the Commonwealth was required to prove only one of these mental states beyond a reasonable doubt.

¶ 12 This Court has not yet defined "wanton" or "cruel" in the context of the cruelty to animals statute. *But see Simpson, supra* at 500 n. 4 (noting that BLACK'S LAW DICTIONARY defines "wanton" as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences"). We agree with the *Simpson* Court that the definitions of "wanton or cruel" within the context of § 5511(c) should be construed according to their "common and approved usage." *Simpson, supra* (quoting 1 Pa.C.S.A. § 1903(a)). Appellant himself has directed this Court's attention to a definition of wanton, which, ironically, sums up Appellant's actions perfectly:

Wanton misconduct means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences.

*Lewis v. Miller,* 374 Pa.Super. 515, 543 A.2d 590, 592 (1988) (quotation omitted).

¶ 13 Considering all of the evidence admitted at trial in the light most favorable to the Commonwealth, we opine that there was sufficient evidence for the trier of fact to find, beyond a reasonable doubt, that Appellant had wantonly denied his dogs access to clean and sanitary shelter. That the home in which the dogs were kept was unsanitary was never seriously questioned. The Commonwealth presented expert testimony that was neither challenged nor refuted that the home was unclean and unsanitary. (Notes of Testimony ("N.T."), 2/18/04, at 16; R.R. at 14a). In fact, Appellant's counsel admitted several times during both testimony and argument that the conditions in Appellant's home were "nasty" and appeared to be unsanitary. (N.T. at 22, 128; R.R. at 20a, 126a). That the dogs were in good general health when they were taken into custody was providential; it most certainly is **not**, as Appellant argues, evidence that the home was sanitary. Moreover, this Court cannot help but be struck by the danger of keeping fourteen (14) large dogs in one small, fetid house, with no access to sufficient food, water or ventilation. Even without the veterinarian's testimony that the dogs were at risk for disease, infection and parasites, we believe this danger to be so obvious that no reasonable person could have overlooked it. (*See* N.T. at 10; R.R. at 8a).

¶ 14 In sum, we hold that the evidence was more than sufficient for the trial court to have concluded that Appellant wantonly had deprived his dogs of access to clean and sanitary shelter. Because the evidence was sufficient to support the trial court's finding that Appellant acted wantonly, we need not decide whether Appel-

lant acted cruelly. Accordingly, we affirm Appellant's judgment of sentence.

¶ 15 Judgment of sentence affirmed.