J-S24007-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOHN CHRISTIAN TANIS, III, | : | |
| | : | |
| Appellant | : | No. 1118 MDA 2015 |

Appeal from the Judgment of Sentence February 18, 2015
in the Court of Common Pleas of Lackawanna County,
Criminal Division, No(s): CP-35-CR-0000407-2013;
CP-35-CR-0000410-2013

BEFORE:  GANTMAN, P.J., BOWES and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED MAY 23, 2016**

John Christian Tanis, III ("Tanis"), appeals from the judgment of sentence imposed after he was convicted of five counts of misdemeanor cruelty to animals and four counts of summary cruelty to animals.[1]  We affirm.

The trial court set forth the relevant procedural history and facts underlying this appeal in its Memorandum denying Tanis's post-sentence Motions.  **See** Memorandum, 6/23/15, at 1-2.[2]  We adopt the trial court's recitation as though fully set forth herein.  **See id.**

By an Order entered on June 23, 2015, the trial court denied Tanis's post-sentence Motions, and issued the Memorandum.  Tanis then timely filed

---

[1] **See** 18 Pa.C.S.A. § 5511(c).

[2] We additionally observe that Tanis had several prior convictions of cruelty to animals.

a Notice of Appeal. In response, the trial court ordered Tanis to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Tanis timely filed a Concise Statement.

On appeal, Tanis presents the following issues for our review:

A. Whether the lower court erred when it denied [Tanis's] request for arrest of judgment and/or judgment of acquittal and/or [M]otion for new trial because the Commonwealth added new theories of criminal liability during trial without notice to [Tanis], and there was a variance between the charges set forth in the [criminal i]nformations and the Commonwealth's trial presentation?

B. Whether there was sufficient evidence to support the verdicts on each charge set forth in 13 CR 407 and 13 CR 410?

C. Whether the verdicts were against the weight of the evidence?

D. Whether the lower court erred when it failed to find that 18 Pa.C.S.A. § 5511(c) is vague, contains undefined terms and fails to give adequate notice of proscribed conduct?

E. Whether the lower court erred when it denied [Tanis's] [M]otion for arrest of judgment and/or judgment of acquittal and/or a new trial because [Tanis] was prejudiced by the pre-trial publicity?

F. Whether the lower court committed an abuse of discretion when it imposed a harsh and unreasonable sentence?

Brief for Appellant at 4-5.

Tanis first argues that the Commonwealth improperly added new theories of criminal liability at trial, without having given him notice, and

- 2 -

that there was a variance between the charges set forth in the criminal informations and those presented at trial. *See id.* at 19-24. Specifically, Tanis asserts that in the "to wit" section of the informations, the Commonwealth charged him with only "neglecting" the five dogs at issue, and that "the Commonwealth did not give notice to [Tanis] that it would utilize any theory other than 'neglect.'" *Id.* at 23; *see also id.* at 21-22. According to Tanis, however, "[a]t the time of trial, the Commonwealth's proof and submissions went beyond the charges identified in both informations," which constituted a violation of his due process rights. *Id.* at 23. According to Tanis, this prejudiced him because "[i]t is possible the jury found [him] guilty on a theory of liability that was not identified in the informations." *Id.* at 24.

> [D]ue process requires that the criminal information provide fair notice of every crime of which a criminal defendant is accused[. **S**]*ee **Commonwealth v. Khorey***, 521 Pa. 1, 555 A.2d 100, 108 (Pa. 1989); Pa.R.Crim.P. 560(C) (providing that "[t]he information shall contain the … citation of the statute … or other provision of law that the defendant is alleged therein to have violated"). To comport with due process, the notice provided must be sufficiently specific so as to allow the defendant to prepare any available defenses should he exercise his right to a trial. ***Commonwealth v. Little***, 455 Pa. 163, 314 A.2d 270, 273 (Pa. 1974). Such notice ensures that, if the Commonwealth prevails at trial, the defendant's conviction is not arbitrary or oppressive.

***Commonwealth v. Sims***, 919 A.2d 931, 939 (Pa. 2007) (citation omitted). However, "[i]f there exists a variance between the allegations of an information and proof at trial, such variance is harmless error unless a

defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right." ***Commonwealth v. Lohr***, 468 A.2d 1375, 1377 (Pa. 1983). "[P]ursuant to Pennsylvania law, an information is not to be read in an overly technical form. Thus, we will arrest judgment only when an error misleads a defendant as to the charges against him, precludes him from anticipating the Commonwealth's proof, or impairs a substantial right." ***Commonwealth v. Morales***, 669 A.2d 1003, 1006 (Pa. Super. 1996).

Here, the trial court concisely addressed Tanis's claim in its Memorandum and correctly determined that the criminal informations gave Tanis adequate notice, and he was not deprived of due process. ***See*** Memorandum, 6/23/15, at 3-4. As the trial court's sound rationale is supported by the record and the law, we affirm on this basis as to this issue. ***See id.***; ***see also Morales, supra*** (stating that an information is not to be read in an overly technical form).[3]

In his second issue, Tanis challenges the sufficiency of the evidence supporting his convictions of cruelty to animals. ***See*** Brief for Appellant at 25-35.

---

[3] As an addendum, we observe that the criminal informations, in fact, alleged more than just that Tanis had "neglected" the dogs at issue. ***See*** Criminal Information, 3/15/13 (providing, as to each charge, *inter alia*, that Tanis committed cruelty to animals "if he wantonly or cruelly ill[-]treats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care ….").

- 4 -

J-S24007-16

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction.

**Commonwealth v. Crawford**, 24 A.3d 396, 404 (Pa. Super. 2011) (citation omitted). "The Commonwealth is not required to depend upon proof by direct evidence, but may also meet its burden by circumstantial evidence alone." **Id.** at 405.

The Crimes Code defines the offense of cruelty to animals as follows:

**(1)** A person commits an offense if he wantonly or cruelly ill[-]treats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.

> **(2)(i)** Except as provided in subparagraph (ii), a person convicted of violating paragraph (1) commits a summary offense.

> **(ii)** A person convicted for a second or subsequent time of violating paragraph (1) commits a misdemeanor of the third degree if all of the following occurred:

>> **(A)** The action or omission for which the person was convicted for a subsequent time was performed on a dog or cat.

- 5 -

**(B)** The dog or cat was seriously injured, suffered severe physical distress or was placed at imminent risk of serious physical harm as the result of the person's action or omission.

18 Pa.C.S.A. § 5511(c). The culpability requirement of Section 5511 is wantonness or cruelty. *Crawford*, 24 A.3d at 402.

> Wanton misconduct means that the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences. [*Commonwealth v. Tomey*, 884 A.2d 291, 294 (Pa. Super. 2005).] "Cruel," in its common usage, is defined as "disposed to inflict pain or suffering," "devoid of humane feelings," "causing or conducive to injury, grief, or pain," and "unrelieved by leniency." **Merriam-Webster's Online Dictionary.**

*Crawford*, 24 A.3d at 402 (paragraph break omitted); *see also id.* at 405 (stating that "[a] state of mind by its very nature is subjective; a person's mind cannot be opened so that his or her intent can be observed. In the absence of a declaration disclosing a person's intent, therefore, one can only look to the conduct and the circumstances surrounding it to determine the mental state which occasioned it.") (citation omitted).

Tanis asserts several reasons in support of his claim that the Commonwealth failed to present sufficient evidence to convict him of cruelty to animals:

- There was insufficient proof that Tanis had acted "wantonly" or "cruelly." *See* Brief for Appellant at 26-29; *see also id.* at 30 (asserting that "[b]ut for the fact that [Tanis] was unable to afford the cost of a vet[erinarian], his actions [following the warning issued by the dog enforcement officer] indicated that

- 6 -

he was willing to get veterinary care for his dogs. [] This was not the conduct of someone engaging in cruel and wanton behavior.").

- "[T]he Commonwealth's case was completely based upon circumstantial evidence[,]" and the Commonwealth presented no direct evidence that he had committed any acts or omissions with respect to any dog. *Id.* at 30.

- The dog enforcement officer found thirteen dogs on Tanis's property, only four of which were "thin." *Id.* at 29. According to Tanis, "the presence of nine healthy dogs should be viewed as circumstantial evidence of his innocence." *Id.*

- "There was no evidence of any affirmative act by [Tanis], which would suggest he was cruel to these dogs." *Id.* at 31 (citing 18 Pa.C.S.A. § 301 (providing, in relevant part, that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable.").

- "[T]he circumstantial evidence in this case did not rule out the possibility that a third party was poisoning [Tanis's] dogs since the vets never tested all of the dogs' blood for poison." *Id.* at 32 (pointing out that Tanis had previously reported to the police that he suspected someone was poisoning his dogs).

- "[T]he testimony provided by Dr. [Sarah] Muhrer [("Dr. Muhrer"), the veterinarian who examined the dogs at issue,] was also insufficient to support the verdicts. Her testimony showed that these dogs suffered from some ailments, but they were not in critical condition." *Id.*; *see also id.* at 33 (wherein Tanis maintains that Dr. Muhrer, who was "clearly biased against him[,]" "characterized the[] [dogs] as 'emaciated[,]' … [which] contradicts the testimony of the dog enforcement officer, who characterized the dogs as 'thin.'").

- Finally, Tanis argues that his conviction of misdemeanor cruelty to animals, concerning the charge levied against him for the dog named "Red," cannot stand because the trial court acquitted him of the summary cruelty to animals count concerning Red, and there was insufficient evidence for the jury to convict him of the misdemeanor charge. *Id.* at 34-35. Tanis contends that there was no evidence presented to (1)

"show that Red's condition was related to any act or omission by [Tanis]"; (2) "show how long Red had been roaming around on his own"; or (3) "prove that [Tanis] ever owned or possessed Red." *Id.* at 35.

In its Memorandum, the trial court thoroughly addressed each of Tanis's separate arguments detailed above, summarized the relevant law, and rejected each argument. *See* Memorandum, 6/23/15, at 5-13. As the trial court's cogent rationale is supported by the record and the law, and we likewise determine that there was ample evidence presented to sustain each of Tanis's convictions, we affirm on this basis as to Tanis's second issue. *See id.*

Next, Tanis contends that his convictions were against the weight of the evidence. *See* Brief for Appellant at 35-37. In support of this claim, Tanis points to the alleged inconsistency between the testimony of the dog enforcement officer, who had described the dogs at issue as being "thin," and that of Dr. Muhrer, who described them as being "emaciated." *Id.* at 33. Tanis points out that the dog enforcement officer gave Tanis a warning to take the dogs to a veterinarian within seven days, and did not seize any dogs during her visit. *Id.* Additionally, Tanis again emphasizes that he had nine healthy dogs. *Id.* at 37.

> Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. On appeal, [an appellate] Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight. Our

review is limited to determining whether the trial court abused
its discretion[.]

***Commonwealth v. Sanchez***, 36 A.3d 24, 27 (Pa. 2011) (citations and quotation marks omitted); ***see also Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003) (stating that "in instances where there is conflicting testimony, it is for the [fact-finder] to determine the weight to be given the testimony.") (citation omitted).

The trial court addressed this issue in its Memorandum, and determined that there is no merit to Tanis's challenge to the weight of the evidence. **See** Memorandum, 6/23/15, at 13-14. We agree with the trial court's rationale and determination, and affirm on this basis. **See id.** Additionally, we discern no abuse of discretion by the court in rejecting the weight challenge, nor does the verdict shock our sense of justice. **See Sanchez**, **supra**.

Tanis next contends that the trial court erred by failing to rule that the cruelty to animals statute is unconstitutionally vague, in that it does not (1) adequately define several of the terms used in the statute; or (2) provide sufficient definiteness for ordinary people to understand what conduct is prohibited. **See** Brief for Appellant at 37-40; ***see also id.*** at 39 (asserting that section 5511(c) does not adequately define the terms, "wantonly," "cruelly," "ill-treats," "overloads," "beats," "abuses," "neglects," or "abandons."). Tanis maintains that he is older and "is from a generation [that allowed] for dogs to roam neighborhoods and to be relatively self-

sufficient[,]" and "there is a generational divide in how one views the requirements of the statute." *Id.* at 39. Additionally, Tanis urges that reasonable minds could differ on when veterinary intervention is required, and "most reasonable people in his situation would take a 'wait and see' approach before expending significant amounts of money on expensive veterinary care." *Id.* at 40.

> The constitutionality of a statute is a question of law; therefore, the scope of appellate review is plenary. **Commonwealth v. Moss**, 2004 PA Super 224, 852 A.2d 374, 379 (Pa. Super. 2004). "The constitutional validity of duly enacted legislation is presumed. The party seeking to overcome the presumption of validity must meet a formidable burden." **Commonwealth v. Haughwout**, 2003 PA Super 427, 837 A.2d 480, 487 (Pa. Super. 2003), *citing* **Commonwealth v. Means**, 565 Pa. 309, 773 A.2d 143 (2001). "A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality." **Commonwealth v. Mayfield**, 574 Pa. 460, 466, 832 A.2d 418, 421 (2003) (internal citations and quotation marks omitted).

> This [C]ourt set forth the standards for evaluating a vagueness challenge as follows:

>> Due process demands that a statute not be vague. A statute is vague if it fails to give people of ordinary intelligence fair notice as to what conduct is forbidden, or if they cannot gauge their future, contemplated conduct, or if it encourages arbitrary or discriminatory enforcement. A vague law is one whose terms necessarily require people to guess at its meaning. If a law is deficient—vague—in any of these ways, then it violates due process and is constitutionally void.

>> By contrast, to be valid, a penal statute must set forth a crime with sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. The law must provide reasonable standards

- 10 -

which people can use to gauge the legality of their contemplated, future behavior.

At the same time, however, the void for vagueness doctrine does not mean that statutes must detail criminal conduct with utter precision. Condemned to the use of words, we can never expect mathematical certainty from our language. Indeed, due process and the void for vagueness doctrine are not intended to elevate the practical difficulties of drafting legislation into a constitutional dilemma. Rather, these doctrines are rooted in a rough idea of fairness. As such, statutes may be general enough to embrace a range of human conduct as long as they speak fair warning about what behavior is unlawful. Such statutes do not run afoul of due process of law.

*Commonwealth v. Habay*, 2007 PA Super 303, 934 A.2d 732, 737 (Pa. Super. 2007) (citations, brackets, emphasis, and ellipses omitted)[.]

*Crawford*, 24 A.3d at 400.

The appellant in *Crawford* alleged that section 5511(c) was void for vagueness because the statute did not define several terms used therein, and was not sufficient to give adequate notice to a reasonable person that the appellant's actions (piercing the ears of kittens and docking their tails) were prohibited. *See id.* at 400. In rejecting the appellant's claim and holding that the statute was constitutional, this Court stated as follows:

We do not agree with appellant that the particular words complained of are vague when considered in the context of the statutes and with a view to effectuating the purpose of the acts — prevention of the cruelty to animals. Much of the law against animal cruelty can be summed up in the phrase "common sense" and such is the case herein. The fact that specific acts of maiming, mutilation, torture, and disfigurement are not enumerated, a difficult task at best, does not render the statutory standard void for vagueness. Criminal laws are not

- 11 -

"vague" simply because the conduct prohibited is described in general language. There are an infinite number of ways in which the callously indifferent can subject animals in their care to conditions which make one cringe. It is thus impossible for the Legislature to catalog every act which violates the statute.

*Id.* at 402; *see also Haughwout*, *supra* (stating that the constitutional validity of duly enacted legislation is presumed).

*Crawford* is controlling here. Though we agree with Tanis that there are factual differences between the instant case and *Crawford*, this does not undermine *Crawford's* applicability.[4]

In rejecting Tanis's claim that section 5511(c) is unconstitutionally vague, the trial court stated as follows:

> [Tanis's] dogs were malnourished, dehydrated and suffering from a number of medical ailments that were easily treated by a veterinarian. Common sense would indicate that dogs should be provided with enough food and water so that they are not malnourished or dehydrated, and should be brought to the veterinarian to address treatable ailments. [Tanis] did not provide basic care for these dogs, and inflicted suffering on them, which ordinary people of any generation would know violates the cruelty to animals statute.

Memorandum, 6/23/15, at 17. We agree with the trial court's reasoning and likewise conclude that the cruelty to animals statute is constitutional as

---

[4] Moreover, our review of the record discloses evidence of more egregious conduct in the instant case, as compared to *Crawford*, concerning Tanis's cruel disregard for the health and humane treatment of his dogs (and particularly the fact that he appears to have specifically "targeted" only the five Weimaraners for the inhumane treatment).

applied to Tanis's case. **See Crawford**, **supra**.[5]

In his fifth issue, Tanis maintains that the trial court erred by denying his Petition for change of venue due to pretrial media coverage regarding his case. **See** Brief for Appellant at 41-43.

> A trial court's decision on a defendant's motion for a change of trial venue[,] based on the claimed existence of pretrial publicity prejudicial to his or her right to trial before an impartial jury[,] is one vested within its sound discretion, and a trial court's decision to deny such a motion will not be overturned by this Court on appeal, unless the record evidences that the trial court has abused its discretion in making its ruling. We have recognized that the trial court is in the best position to assess the atmosphere of the community and to judge the necessity of any requested change. In reviewing the trial court decision not to grant a change of venue the focus of our inquiry is to determine whether any juror formed a fixed opinion of the defendant's guilt or innocence due to the pretrial publicity.

**Commonwealth v. Briggs**, 12 A.3d 291, 313 (Pa. 2011) (internal citations and quotation marks omitted). "As a general rule, for a defendant to be entitled to a change of venue because of pretrial publicity, he or she must show that the publicity caused actual prejudice by preventing the empanel[]ing of an impartial jury." **Id.**

The trial court addressed Tanis's claim, summarized the parties' arguments, and determined that Tanis was not prejudiced by any pretrial

---

[5] Moreover, we reject Tanis's invitation to overlook **Crawford** merely because the Pennsylvania Supreme Court has not yet weighed in on the issue of the constitutionality of 18 Pa.C.S.A. § 5511(c). **See** Brief for Appellant at 40. Crawford remains good law, is binding precedent, and its holding is sound. **See Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa. Super. 2013) (noting that one panel of the Superior Court is not empowered to overrule another panel of the Superior Court).

publicity. **See** Memorandum, 6/23/15, at 15-16. The trial court's analysis is sound and supported by the law and record, and we therefore affirm on this basis in concluding that the court did not abuse its discretion by refusing to change venue. **See id.**

Finally, Tanis argues that the sentencing court committed an abuse of discretion because it imposed a harsh and unreasonable aggregate sentence by ordering his separate sentences to run consecutively. **See** Brief for Appellant at 18, 43-44.[6]

Tanis challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. **See Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review, by raising it at sentencing or in a timely post-sentence motion, the appellant must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. **Hill**, 66 A.3d at 363-64.

Tanis included a Rule 2119(f) Statement in his brief. **See** Brief for Appellant at 18. In considering whether Tanis's Rule 2119(f) Statement

---

[6] Tanis received an aggregate sentence of one to two years in jail, followed by two years of probation.

presents a substantial question, we observe that he advances only the following substantive argument:

> [T]he sentencing court committed an abuse of discretion when it imposed consecutive sentences. He asserts that the sentences[,] although each fell in the standard sentence range, were harsh and unreasonable since they were ordered to be served consecutively[.]

*Id.*

It is well-settled that the imposition of consecutive as opposed to concurrent sentences is solely within the sound discretion of the trial court, and does not in and of itself present a substantial question. *See Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa. Super. 2008). "[T]he imposition of consecutive, rather than concurrent sentences, may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*); *see also Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) (stating that "a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question." (emphasis omitted)). In the instant case, Tanis advances nothing more than

- 15 -

a bald claim of excessiveness attributable to the consecutive nature of his sentences. Accordingly, this bald claim does not present a substantial question. **See Dodge, supra**.[7]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2016

---

[7] Nevertheless, even if we reached the merits of Tanis's final claim, we would determine that the court properly exercised its discretion in sentencing Tanis, for the reasons set forth in the trial court's Memorandum. **See** Memorandum, 6/23/15, at 18. Tanis's sentence was not unduly harsh under the circumstances, particularly in light of his numerous prior convictions of cruelty to animals. **See Lamonda, supra**; **see also** Memorandum, 6/23/15, at 18.

- 16 -

CLERK OF JUDICIAL
RECORDS CRIMINAL
DIVISION

2015 JUN 23 AM 11 37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS |
| | :    OF LACKAWANNA COUNTY |
| | : |
| vs. | : |
| | : |
| JOHN TANIS, | : |
|           Defendant | :      NOS. 13-CR-407 & 410 |

## MEMORANDUM AND ORDER

On December 9, 2014, following a jury trial, Defendant John Tanis was convicted of five misdemeanor counts of cruelty to animals. On that same date, this court found the defendant guilty of four summary offenses of cruelty to animals, but acquitted him of one summary offense. On February 18, 2015, the defendant was sentenced to one to two years of incarceration, followed by two years of probation. On February 27, 2015, the defendant filed Post Sentence Motions, and a brief in support thereof. On April 17, 2015, the Commonwealth filed a response and brief in opposition thereto. This matter thus awaits disposition.

## I. BACKGROUND

These charges arose in October of 2012 when it came to the attention of the Moosic Police Department that five dogs belonging to the defendant were very thin and in need of veterinary care. On October 20, 2012, one of the defendant's dogs, a Weimaraner named Red, appeared in the Moosic Police Department parking lot. The dog could not stand and appeared sick, so the police brought the dog to a veterinarian, Dr. Colin Jeschke, who determined that the dog was malnourished and had parasites. On October 31, 2012, after

receiving complaints about the defendant's house and the number of dogs being kept there, officers from the Moosic Police Department went to the defendant's home with an officer from the Humane Society, Jessica Best, who found 13 dogs in the home and dog feces and urine all over the kitchen. Four of the dogs, all Weimaraners, were very thin and weak, so Ms. Best issued a warning to the defendant to obtain veterinary care for those dogs. Later that same date, the defendant contacted the Moosic Police Department and reported that someone was poisoning his dogs by throwing tainted dog biscuits into his yard. When the police responded, the officers told the defendant to bring the dogs to a veterinarian to have them tested, but the defendant indicated that he could not afford to bring them to a veterinarian. The Moosic police found a veterinarian who would treat the dogs without charge, and on November 2, 2012, after obtaining the consent of the defendant, they brought the four Weimaraners to the veterinarian, Dr. Sarah Muhrer. Dr. Muhrer found that the dogs had not been poisoned, but instead were dehydrated, malnourished, emaciated, and suffering from various medical ailments.

A jury trial was held on December 8 and 9, 2014, and the jury found the defendant guilty of five counts of misdemeanor cruelty to animals. That same date, this court found the defendant guilty of four summary offenses of cruelty to animals, but acquitted him of one summary offense. On February 18, 2015, the defendant was sentenced to one to two years, followed by two years of probation.

On February 27, 2015, the defendant filed Post Sentence Motions, and a brief in support. On March 2, 2015, this court entered an order establishing a briefing schedule for the post trial motions. On April 17, 2015, the Commonwealth filed a brief in opposition.

## II. DISCUSSION

The defendant raises thirteen issues in his post trial motion, and the Commonwealth has responded to each of these issues.

2

## A. Motion for New Trial Due to Variances Between Informations and Commonwealth's Proof

The defendant asserts that in the "to wit" section of the informations, the Commonwealth only charged him with neglecting the dogs, and did not include ill-treating; depriving of sustenance, drink, shelter or veterinary care; or depriving access to clean and sanitary shelter. He argues that the Commonwealth introduced evidence that he deprived the dogs of sustenance and veterinary care and thus expanded the scope of the charges to include these new theories of liability not contained in the informations and he was surprised by these new theories.

The Commonwealth replies that there were no new theories of liability introduced at trial, and that all of the language which the defendant alleges was not in the informations, does in fact appear in the informations. The Commonwealth asserts that the defendant's assertion that every verb used in the statute must be included in the "to wit" section of the informations is an overly technical reading of the informations. The Commonwealth argues that it properly informed the defendant in the informations as to exactly what he was alleged to have done to each dog that constituted cruelty to animals.

Rule 560 requires that an information contain "a plain and concise statement of the essential elements of the offense," and provides that "the issues at trial shall be defined by such information." Pa.R.Crim.P. 560. An information is not to be read in an overly technical manner, and a court will arrest judgment only when an error misleads a defendant as to the charges against him or precludes him from anticipating the Commonwealth's proof. Commonwealth v. Morales, 669 A.2d 1003 (Pa. Super. 1996).

Here, each count of the informations details the actions that will constitute cruelty to

3

animals as specified in 18 Pa.C.S.A. §5511(c), including the elements which the defendant represents are not there and by which he was surprised. In the "to wit" section of the informations, the Commonwealth details the conditions of each dog which led to the charges of cruelty to animals. This court agrees with the Commonwealth that the defendant is engaging in an overly technical reading of the informations. The informations contain all of the theories of liability that can constitute "cruelty to animals" as detailed in the statute, including depriving animals of sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter, and then details the dogs' conditions, including that they were emaciated, dehydrated and suffering from treatable ailments. It could not have surprised the defendant that the Commonwealth introduced evidence to support the allegations that he ill treated the dogs by depriving them of food, water, veterinary care, or clean and sanitary shelter. Because the informations contained a plain and concise statement of the essential elements of the offense and informed the defendant of the issues at trial, the informations were sufficient.

### B. Sufficiency of Evidence

The defendant's next seven arguments are that the evidence was not sufficient to support the convictions. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission of the crime by the accused, beyond a reasonable doubt. Commonwealth v. Johnson, 910 A.2d 60 (Pa. Super. 2006), app. denied, 923 A.2d 473 (Pa. 2007). When reviewing a sufficiency claim, the court must view the evidence in the light most favorable to the Commonwealth, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Id. at 64. A sufficiency argument that is founded upon disagreement with the credibility determinations made by the fact finder, or discrepancies in the accounts of the witnesses, does not warrant

4

relief, for it is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part or none of the evidence introduced at trial. Id. Moreover, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. Commonwealth v. Arrington, 86 A.3d 831 (Pa. 2014).

The cruelty to animals statute provides:

> A person commits an offense if he wantonly or cruelly ill-treats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.

18 Pa.C.S.A. §5511(c)(1).

### 1. **Mens Rea**

The defendant asserts that the Commonwealth failed to prove that his actions were "wanton" or "cruel" as required by the statute He asserts that to prove cruelty, the Commonwealth has to show that he intentionally and maliciously inflicted mental or physical suffering on the dogs. He argues that to prove wanton behavior, the Commonwealth has to prove that he unreasonably or maliciously risked harm while being utterly indifferent to the consequences. He argues that there was no evidence to show his mens rea here, and that since nine of his dogs were healthy, and since he voluntarily allowed the police to take four of the dogs to the veterinarian, this shows that he was not intentionally harming the dogs, or that he was utterly indifferent to the consequences.

The Commonwealth replies that mens rea can be established by circumstantial evidence alone, and that here the evidence that he failed to care for five of his dogs and that they were emaciated, dehydrated and parasite ridden showed that he intentionally inflicted

5

harm on the dogs, and that he unreasonably risked harm to them. The Commonwealth asserts that the defendant chose not to care for these five dogs and was indifferent to the consequences.

Proof that a defendant wantonly or cruelly treated an animal may be shown by circumstantial evidence alone. Commonwealth v. Crawford, 24 A.3d 396 (Pa. Super. 2011). This is because a person's state of mind is by its very nature subjective, and in the absence of a declaration disclosing a person's intent, one can only look to the conduct and circumstances surrounding it to determine the mental state which occasioned it. Id. at 405. A person acts cruelly when he intentionally and maliciously inflicts mental or physical suffering on an animal, and acts wantonly when he unreasonably or maliciously risks harm while being utterly indifferent to the consequences. Commonwealth v. Simpson, 832 A.2d 496 (Pa. Super. 2003). Where the condition of an animal or an animal's living conditions are so obviously harmful that a reasonable person cannot overlook them, the evidence is sufficient to show that the defendant acted wantonly or cruelly. Commonwealth v. Tomey, 884 A.2d 291 (Pa. Super. 2005); Crawford, 24 A.3d at 405.

Here, the poor condition of the five dogs was obvious since they were malnourished, dehydrated, infested with parasites and had other ailments. The two veterinarians who treated the dogs, Drs. Jeschke and Muhrer, both testified as to the dogs' poor health. The officers who responded to the calls about the dogs also could see that they were in poor condition. In fact, the photographs of the dogs introduced into evidence by the Commonwealth made it obvious to any reasonable person that these five dogs were not being cared for, and that the defendant was acting wantonly or cruelly toward them. The jury reached this conclusion, and this court will not disturb the jury's finding that the defendant acted wantonly or cruelly

6

toward these five dogs.

2. **Circumstantial Evidence**

The defendant asserts that the Commonwealth presented no direct evidence that he committed any acts or omissions with respect to any dog, and based its case completely upon circumstantial evidence. The defendant argues that since only four of the dogs in his house were in poor condition, and the other nine were healthy, this is evidence that he was providing appropriate care.

The Commonwealth replies that it may sustain its burden by wholly circumstantial evidence, and here it was apparent from the evidence and testimony that the physical state of the five dogs was caused by the defendant's neglect. The Commonwealth asserts that it did not charge the defendant concerning the nine other dogs because they appeared healthy, and there was ample testimony that the five dogs' poor body conditions, diseases and life threatening states were sufficient for the jury to find the defendant guilty.

The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. Commonwealth v. Arrington, 86 A.3d 831 (Pa. 2014). The Commonwealth presented ample evidence that only the defendant's Weimaraners were malnourished and in poor health, while the other nine dogs appeared to be healthy. Contrary to the defendant's argument that this is evidence that he was caring for the dogs, it seems that the defendant singled out the Weimaraners for poor treatment. He had the knowledge, ability and intent to adequately feed, nourish and provide medical treatment for the other nine dogs, but singled out the Weimaraners and intentionally subjected only them to the cruel treatment that led to their poor condition. The jury also was aware of the disparity in the defendant's treatment of the Weimaraners and the other dogs and reached the conclusion that he was

7

depriving only these five dogs of sustenance and medical care. This court will not disturb this conclusion.

### 3. **Voluntary Act**

The defendant argues that pursuant to 18 Pa.C.S.A. §301, a voluntary act is required to establish criminal liability. He asserts that the Commonwealth failed to establish any voluntary act on his part since there was no evidence of any affirmative act or omission by him. He argues that even if there was some omission, there are no objective standards spelling out his duty toward the dogs under the cruelty to animals statute.

The Commonwealth replies that the statute does establish standards and states that an owner of animals must provide them with necessary sustenance, drink, shelter and veterinary care. The Commonwealth argues that since the five dogs were emaciated, in poor health and suffering from a variety of medical conditions, it established that the defendant failed to care for them as required by the statute.

This court agrees that the Commonwealth established that the defendant failed to care for the dogs, and that he failed to perform a duty imposed by the cruelty to animals statute, and thus committed a voluntary act under 18 Pa.C.S.A. §301. The Pennsylvania Superior Court has held that the cruelty to animals statute is not void for vagueness, and that while there are an infinite number of ways that the callously indifferent can subject animals in their care to cruelty, the legislature cannot catalog every such act, and animal owners should use "common sense" in determining what acts are required to avoid the infliction of suffering on animals. Commonwealth v. Crawford, 24 A.3d 396 (Pa. Super. 2011). The condition of the dogs was such that the veterinarians who treated them determined that they were malnourished, dehydrated, and suffering from various medical afflictions. Common sense

8

dictates that a dog owner should feed his dogs and bring them to the veterinarian. The defendant here was not providing these dogs with necessary sustenance, drink, shelter and veterinary care, and voluntarily violated the cruelty to animals statute.

4. **Third Party Caused Dogs' Poor Condition**

The defendant asserts that the Commonwealth failed to rule out the possibility that someone other than the defendant caused the dogs to be in poor condition, and failed to establish that he caused the dogs' conditions. He argues that he suspected that someone was poisoning his dogs and it is just as likely that the dogs' conditions were the result of a stranger's conduct.

The Commonwealth replies that its evidence proved that the defendant neglected the dogs and deprived them of veterinary care. It asserts that testimony from Dr. Sarah Muhrer demonstrated that the dogs were emaciated, had parasites, were dehydrated and some had heart conditions. The Commonwealth argues that this testimony was sufficient to show that the defendant neglected the health of the dogs.

The defendant's argument that the Commonwealth failed to rule out the possibility that a third party was poisoning the five dogs and that the poisoning caused their poor health is without merit. Dr. Muhrer testified that there was not any indication that the dogs were poisoned based on their blood work and how well they had done since receiving treatment. Transcript of December 9, 2014 Jury Trial at 69. Even if the defendant had established that the dogs had been poisoned, which he did not, it would make no sense that only the five Weimaraners were poisoned, while the other nine dogs were not. The jury heard this testimony and argument by the defendant, and determined that the defendant caused the dogs' poor condition, and not some unknown third party throwing poisoned dog biscuits into the

9

yard. This court will not disturb this finding.

### 5. **Sufficiency of Dr. Muhrer's Testimony**

The defendant argues that Dr. Muhrer's testimony was that the dogs were sick, but not critical, and did not link the dogs' conditions to any act or omission by the defendant. He argues that her testimony that the dogs were underweight was incorrect since she estimated their ages and corresponding ideal weights, and while she testified that they were emaciated, the dog enforcement officer characterized the dogs as only thin.

The Commonwealth responds that Dr. Muhrer's testimony was that the dogs were suffering from lack of care and sustenance, and that while they suffered from many medical conditions, had the dogs been provided with necessary veterinary care and sustenance, these medical issues could have been avoided. The Commonwealth argues that there was thus a causal link between the care provided by the defendant and the condition of the dogs, and the jury listened to this testimony and found that there was a causal link.

A sufficiency argument that is founded upon disagreement with the credibility determinations made by the fact finder, or discrepancies in the accounts of the witnesses, does not warrant relief, for it is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part or none of the evidence introduced at trial. Commonwealth v. Johnson, 910 A.2d 60 (Pa. Super. 2006), app. denied, 923 A.2d 473 (Pa. 2007). The jury heard the testimony of Dr. Muhrer and of the dog enforcement officer, Jessica Best, as well as the cross examination of Dr. Muhrer during which the defendant attempted to establish that the dogs were not underweight. The jury believed that the dogs were underweight and that the defendant caused the dogs' poor condition. This court will not disturb this finding.

10

## 6. **Sufficiency of Warning Issued by Dog Enforcement Officer**

The defendant argues that he complied with the warning issued by the dog enforcement officer by sending the dogs for veterinary care within the 7 day window provided in the warning, but that the police used this against him in charging him with cruelty to animals. He argues that the dog enforcement officer only issued a warning instead of seizing the dogs, and that he did not possess the required mens rea to wantonly or cruelly neglect the dogs since he voluntarily agreed to send them for veterinary care in trying to comply with the written warning.

The Commonwealth replies that the police took the dogs for a medical examination because the defendant had called them and reported that the dogs were being poisoned, but indicated that he could not afford to take them to the veterinarian for an evaluation. The Commonwealth asserts that the police taking the dogs to the veterinarian had nothing to do with the 7 day window in the warning given by the dog enforcement officer, but rather was due to Officer Decker's concern for the health of the dogs when the defendant called them to his house alleging that the dogs had been poisoned.

Officer James Decker testified that after the defendant called the police on October 31, 2012, and reported that he believed that his dogs were being poisoned, the officers who responded told the defendant to take the dogs to the veterinarian to have them tested. Transcript of December 8, 2014 Jury Trial at 68. The defendant indicated that he could not afford to take them to the vet, so Officer Decker investigated whether there was a veterinarian who would test the dogs without charge. Id. He testified that when he found a veterinarian who would test the dogs without charge, Mr. Tanis voluntarily turned the dogs over to them on November 2, 2012, to have them evaluated to see if they were being poisoned. Id. at 69.

11

He testified that Dr. Muhrer found no evidence that the dogs were poisoned, but did determine that they were not being cared for. Id. at 71. Thus, contrary to the defendant's assertion that he complied with the written warning issued on October 31, 2012 by sending the dogs for veterinary care within the 7 day window provided because he loved his dogs and wanted to get them care, the testimony at trial was that the reason that the police took the dogs to the veterinarian on November 2, 2012, was that the defendant had reported that they were poisoned and the police were investigating this. That the veterinarian found that the dogs were not poisoned, but were emaciated, dehydrated and suffering from numerous medical conditions is not a basis to find that the defendant was improperly charged with cruelty to animals.

### 7. Sufficiency of Evidence in 13-CR-410

The defendant argues that because this court acquitted him of the summary cruelty to animals count concerning his dog named Red, but the jury convicted him of the misdemeanor charge concerning Red using the same evidence, the evidence was insufficient. The defendant asserts that there was no testimony to establish that Red's condition was related to the defendant's actions, no testimony to show how long Red was roaming around the neighborhood, and no testimony to prove that the defendant owned Red. The defendant argues that the jury's conviction is based on suspicion, conjecture and innuendo.

The Commonwealth responds that inconsistent verdicts do not constitute reversible error even where the acquitted offense is a lesser included offense of a charge for which a defendant is found guilty. The Commonwealth argues that there was sufficient evidence that Red was in poor condition and belonged to the defendant, and that the jury was able to find that the defendant failed to provide necessary care for Red and caused his poor state.

12

Courts will not disturb guilty verdicts that are inconsistent as long as there is evidence to support the verdict. Commonwealth v. Stokes, 38 A.3d 846 (Pa. Super. 2011). Here, the jury convicted the defendant of the misdemeanor charge of cruelty to animals concerning the defendant's dog named Red that was found by the police in the Moosic Police Department parking lot on October 20, 2012. This court acquitted him of the summary charge of cruelty to animals concerning Red. There was circumstantial evidence introduced by the Commonwealth that Red had escaped from the defendant, and that he was just as malnourished and neglected as the other dogs, and that he seemed to have been subjected to the same conditions as the other four dogs. Moreover, the evidence showed that the police department was close to the defendant's home and that the defendant had prior problems with dogs escaping from his yard. Thus, while this court found that there was a reasonable doubt that he was guilty concerning Red, the jury reached the opposite conclusion. However, this does not nullify the jury's belief that the evidence concerning Red was sufficient and is not a basis to overturn the conviction since there was evidence to support it.

### C. Weight of the Evidence for Charges

The defendant also argues that the verdict was against the weight of the evidence because the dog enforcement officer only issued a warning since the dogs were just thin and not in dire condition and gave him seven days to get veterinary care for the dogs, which he did; Officer Decker misled the defendant into believing that he was taking the dogs in order to help him comply with the written warning and provide free veterinary care; and there was no direct evidence of cruelty by the defendant since the evidence showed that nine of the defendant's dogs were healthy and cared for.

The Commonwealth replies that the evidence it presented defeats the defendant's

13

weight of the evidence claim. It asserts that Officer Decker only took the dogs from the defendant after he consented and that the officer was concerned with getting a medical evaluation after the defendant reported they were poisoned. It asserts that even though one witness described the dogs as "thin," and the other described them as "emaciated," the jury was free to accept or reject both, one, or neither of the witnesses' testimony. It asserts that the evidence showed that the defendant failed to care for five of his dogs and those were the dogs that gave rise to the charges, not the other nine dogs.

For a court to reverse a verdict on weight of the evidence grounds, the court must determine that the verdict is so contrary to the evidence that it shocks one's sense of justice. Commonwealth v. Johnson, 910 A.2d 60 (Pa. Super. 2006), app. denied, 923 A.2d 473 (Pa. 2007). The verdicts here do not offend one's sense of justice. As detailed in section B above, the amount of evidence implicating the defendant was more than sufficient, and the failure to convict would shock any reasonable person's sense of justice.

### D. Forfeiture of Dogs at Sentencing

The defendant argues that the court erred in ordering the forfeiture of all of the defendant's dogs since he was only convicted concerning five of his dogs. He asserts that the nine other dogs seized have no nexus to any criminal activity, and he also believes that puppies have been born since the dogs were seized and that these puppies also have no nexus to criminal activity. He argues that the evidence concerning Red was insufficient, and he should not have been seized. He argues that forfeiture is a civil action so it was improper for the court to order any forfeiture at sentencing.

The Commonwealth responds that the defendant is mistaken, and that only the five dogs at issue in these cases were ordered forfeited, and that the court ordered the

14

Commonwealth to file a separate forfeiture petition for the other dogs. The Commonwealth asserts that the cruelty to animals statute specifically provides that a court may order forfeiture or surrender of any abused, neglected or deprived animal of the defendant upon conviction for any violation of the cruelty to animals statute. The Commonwealth asserts that the forfeiture of the five dogs was a valid exercise of discretion at the time of sentencing under 18 Pa.C.S.A. §5511(m).

The Commonwealth is correct that at sentencing, this court only ordered the forfeiture of the five dogs that were the subject of the prosecution in this case. Transcript of February 18, 2015 Sentencing at 48. In doing so, this court exercised its discretion under 18 Pa.C.S.A. §5511(m). The Commonwealth sought forfeiture of all of the defendant's dogs, but this court told the Commonwealth that it would have to file a separate petition for forfeiture of the other dogs since there were questions of fact concerning the other dogs and whether they would be forfeitable. Id. at 4-5. This court did order that the defendant was not to possess or own any pets or animals during the period of his supervision. Id. at 48. Thus, the defendant's assertion that this court erred in ordering forfeiture is without merit.

### E. Denial of Petition for Change of Venue

The defendant argues that the court erred when it denied his petition for change of venue due to pre-trial media coverage. He argues that his case received prominent media coverage, and that there were protestors picketing outside of the courthouse which indicated that pre-trial media coverage was influencing the opinion of the public. He argues that although the jurors indicated that they could be fair and impartial, he believes that they were compromised by the publicity and were reluctant to express their opinions in open court.

The Commonwealth replies that the media coverage was not sensational,

15

inflammatory or slanted toward conviction, it did not refer to the defendant's prior record and was not derived from official police reports and therefore was not prejudicial. It argues that the court was in the best position to assess the atmosphere of the community and found that it was not prejudicial to the defendant. Finally, the Commonwealth argues that the jurors indicated that they could be fair and impartial and the defendant has not shown that they were compromised by the pre-trial publicity.

For a court to grant a change of venue due to pretrial publicity, the defendant must demonstrate that the publicity caused actual prejudice by preventing the empanelling of an impartial jury. Commonwealth v. Briggs, 12 A.3d 291 (Pa. 2011). The pivotal question is not whether prospective jurors have knowledge of the crime, or have even formed an initial opinion based on news coverage, but rather whether it is possible for the jurors to set aside their impressions or preliminary opinions and render a verdict solely based on the evidence presented at trial. Id. at 314. During voir dire, the jurors here indicated that they could be fair and impartial. That the defendant believes that some of the jurors were compromised by the publicity and had formed fixed opinions but were "reluctant to express their opinions in open court" is not grounds to find prejudice. The jurors indicated that they could set aside impressions or preliminary opinions and render a verdict based solely on the evidence, and this court has not been presented with any evidence that this was not the case.

### F. Vagueness of Statute

The defendant argues that the cruelty to animals statute is void for vagueness because it does not adequately define the terms used in the statute, nor does it provide sufficient definiteness for ordinary people to understand the conduct that is prohibited. The defendant argues that he is from a generation that allowed dogs to roam neighborhoods and be self-

16

sufficient, and that there is a generational divide about the requirements of the statute. He asserts that the potential poisoning of the dogs could have explained their "thin" condition, and that reasonable minds could differ on when veterinary intervention is required since most reasonable people would take a "wait and see" approach before expending money on expensive veterinary care. He argues that the police second guessed his judgment about when veterinary care is necessary, showing that the statute is vague.

The Commonwealth responds that the requirements of the statute are clear enough for a reasonable person to understand, since reasonable people would understand what "sustenance, drink, shelter, or veterinary care" mean. The Commonwealth asserts that the statute gives citizens fair warning of what conduct is unlawful, and the statute is not vague.

As explained in Section B.3. above, the Pennsylvania Superior Court has held that the cruelty to animals statute is not void for vagueness. In Commonwealth v. Crawford, the court held that while there are an infinite number of ways that the callously indifferent can subject animals in their care to cruelty, the legislature cannot catalog every such act, and animal owners should use "common sense" in determining what acts are required to avoid the infliction of suffering on animals. Commonwealth v. Crawford, 24 A.3d 396 (Pa. Super. 2011). The defendant's dogs were malnourished, dehydrated and suffering from a number of medical ailments that were easily treated by a veterinarian. Common sense would indicate that dogs should be provided with enough food and water so that they are not malnourished or dehydrated, and should be brought to the veterinarian to address treatable ailments. The defendant did not provide basic care for these dogs, and inflicted suffering on them, which ordinary people of any generation would know violates the cruelty to animals statute.

17

## G. Motion for Reconsideration of Sentence

The defendant argues that even though his sentence was within the standard range, the use of consecutive sentencing resulted in severe punishment for the crimes he committed. He asserts that he is 66 years old and has lost 2 years of his life to these cases, as well as his house, possessions and pets. He also asks for credit for time served to the extent that it was not indicated in the sentencing disposition.

The Commonwealth responds that the defendant was sentenced in the standard range for each count, and that the sentence was not excessive nor severe in relation to the charges. The Commonwealth asserts that the court had the benefit of a presentence investigation report so it can be assumed that the court was aware of all relevant information regarding the defendant's character.

The sentences here were in the standard range of the sentencing guidelines and thus appropriate under the Sentencing Code. More importantly, the sentences here were appropriate because this was by no means this defendant's first violation of cruelty to animals laws. As this court explained at sentencing, the defendant had a prior record score of 5, and his record is loaded with prior convictions in three different counties and two different states for cruelty to animals. Transcript of February 18, 2015 Sentencing at 44. The court found that his repetitive conduct in this area, plus a prior record score of 5 and the fact that he committed these violations while still on federal supervision, demonstrated his lack of respect for the law and justified the sentence here.

Finally, the defendant was given credit for time served. He received credit for 310 days. See February 18, 2015 Order of Sentence.

For the foregoing reasons, the defendant's Post Trial Motions are denied. An order

18

consistent with this memorandum follows.

COMMONWEALTH OF : IN THE COURT OF COMMON PLEAS
PENNSYLVANIA : OF LACKAWANNA COUNTY
:
vs. :
:
JOHN TANIS, :
               **Defendant** :       **NOS. 13-CR-407 & 410**

## ORDER AND NOTICE OF RIGHT TO APPEAL

**AND NOW,** to wit, on this __23rd__ day of June, 2015, it is hereby **ORDERED**

**AND DECREED** that Defendant's Post Sentence Motions are **DENIED.**

    **NOTICE IS HEREBY GIVEN,** pursuant to Rule 720 of the Pennsylvania Rules of

Criminal Procedure, that:

(1) the defendant has the right to appeal this decision but must appeal within 30

days of this order;

(2) the defendant has the right to the assistance of an attorney for this appeal;

(3) if the defendant is indigent, he has the right to appeal in forma pauperis and the

right to appointed counsel; and

(4) the defendant may have the qualified right to bail pending appeal.

**BY THE COURT**

_____ , J.

cc:
Robert Trichilo, Esq.
Michael Ossont, Esq.

2